## FRANK KEATING V. STATE OF NEBRASKA.

FILED FEBRUARY 17, 1903.   No. 12,997.

1. **Credibility of Witness:** INSTRUCTION: WITNESS INDIVIDUALLY
NAMED. The trial court gave an instruction of general applica-
tion regarding the credibility of the witnesses who had testified
in the case, including the defendant, who was accused of a
felony, and of the weight to be attached to the testimony of the
several witnesses, which announced a correct rule of law. At
the request of the state, the jury were also instructed that the

---

* Shooting and stabbing section.
Syllabus by court; catch-words by **editor.**

Keating v. State.

defendant had a right to be sworn and testify in his own behalf, but that in weighing his testimony and in determining the weight which should be given thereto the jury might take into consideration his interest in the result of the trial, and the further fact, if the same was proved (which was admitted by the defendant), that he had been convicted of a felony, as affecting his credibility as a witness. *Held,* That the latter instruction was not prejudicially erroneous because of the repetition of the matter contained in the general instruction on the subject, nor, under the circumstances, was it erroneous because the defendant was individually named and his testimony alone alluded to in the latter instruction.

2. **Prior Conviction of Felony:** CREDIBILITY OF WITNESS. By virtue of the statute, a prior conviction of a felony may be proved for the purpose of affecting the credibility of a witness, and the court may properly instruct the jury as to the purpose of such evidence.

3. **Prior Statements as to How a Crime May Be Committed as Evidence.** The accused was charged with and tried for robbery. *Held,* His prior statements as to how the robbery might be committed* were properly admissible in evidence, to be considered by the jury with other facts and circumstances proved, in determining the question of guilt or innocence.

4. **Evidence.** Evidence examined, and found sufficient to support a verdict of guilty, as found by the jury.

ERROR from the district court for Webster county. Indictment for robbery. Tried below before ADAMS, J. Conviction. Sentence to imprisonment in the penitentiary for a period of seven years. *Affirmed.*

*John G. Potter,* for plaintiff in error.

*Frank N. Prout, Attorney General, Norris Brown* and *E. U. Overman,* for the state.

---

* On the trial of an indictment for procuring an abortion, there was evidence that cuts, wounds and bruises were found in the womb of the woman upon whom the operation was alleged to have been performed, indicating the forcible use of some instrument, and that the defendant had the opportunity to commit the crime. *Held,* That evidence that, five months before the alleged operation, the defendant had in his possession an instrument which he described as well fitted to procure an abortion, was admissible. *Commonwealth v. Blair,* 126 Mass., 40.—W. F. B.

42

HOLCOMB, J.

The defendant was informed against in the district court for Webster county, tried for, and convicted of the crime of robbery, and sentenced to imprisonment in the penitentiary for a period of seven years. He brings the record of his trial and conviction to this court for review by proceeding in error.

The petition in error assigns three different grounds or alleged errors as reasons for a reversal of the judgment rendered in the trial court: First, it is contended that the court erred in the giving of one of its instructions to the jury which was requested by the state; second, in admitting the testimony of a witness as to an alleged conversation between him and the defendant regarding a method or plan by which the robbery could be committed on the person whom the defendant was convicted of robbing; and, third, that the evidence is not sufficient to sustain the verdict of guilty returned by the jury.

Taking the assignments of error in their order, the instruction complained of will be first noticed. The court, at the request of the state, gave an instruction in which the jury were, in substance, told that the defendant had the right to be sworn and testify in his own behalf, but that in weighing his testimony and in determining the weight which should be given thereto the jury might take into consideration his interest in the result of the trial and his action and demeanor while on the witness stand, and the further fact, if the same was proved (which was admitted by the defendant), that he had been convicted of a felony, and confined in the penitentiary of another state, as affecting his credibility as a witness. It is argued that the instruction is erroneous and prejudicial, because giving undue prominence and weight to the matter touched upon in the instruction, and having the effect of disparaging the standing of the defendant as a witness in his own behalf, and therefore prejudicial. The sixth instruction, given by the court on its own motion, was a general in-

struction as to the credibility of all witnesses who had testified, including the defendant, unobjectionable in form; and because of this latter instruction it is urged that the one given at the request of the state was prejudicially erroneous. While the general instruction on the subject of the credibility of witnesses was probably sufficient, and rendered it unnecessary to give the one requested, we are not disposed to the view that the giving of the requested instruction was error calling for reversal of the judgment, nor that its effect was to unduly make prominent the rule enunciated, nor to improperly single out and disparage the testimony of the defendant, as contended for. Instructions of this character have been repeatedly upheld by this court. *St. Louis v. State,* 8 Nebr., 405; *Murphy v. State,* 15 Nebr., 383; *Clark v. State,* 32 Nebr., 246; *Housh v. State,* 43 Nebr., 163; *Argabright v. State,* 49 Nebr., 760.

The mere fact of repetition is not alone, in every case, reversible error. If the propositions given are correct, and it is clear that the defendant was not prejudiced thereby, nor the jury unduly influenced in their deliberations in weighing the testimony submitted in the case, the verdict and judgment will not be disturbed. *Hill v. State,* 42 Nebr., 503. The instruction complained of can hardly be condemned without overturning the rule heretofore prevailing, and we observe no sufficient reason for such a departure. The instruction excepted to was the only one calling attention directly to the defendant as a witness in his own behalf and announcing a correct rule as to the weighing of his testimony by the jury. The other instruction announced the rule applicable to the testimony of the witnesses generally in the case who had testified, including the defendant. The defendant stood in a peculiar position, and an instruction applicable to his testimony could be made intelligible only by naming him as a witness to whom the rule applied. The instruction in principle is analogous to those which may be given where a witness's reputation for truth and veracity has been shown

by the evidence to be bad, in which case it would not be error for the court to name such witness or witnesses in stating the rule applicable to the testimony given by him or them. By the statute, conviction of a felony may always be shown for the purpose of affecting the credibility of a witness, and we apprehend no error was committed by the trial court in advising the jury of the purpose and effect of the evidence showing defendant's conviction of a felony prior to the time he testified in the case at bar.

The state was permitted to prove, over the defendant's objection, that in the late winter or early spring prior to the time of the commission of the offense of which he was convicted, which was December 4, 1901, in a conversation with the witness testifying and one other, in which the parties spoke of there being no bank in Rosemont, where the crime was committed, and that the elevator men, the complaining witness and one other, certainly carried quite a sum of money, and it was a wonder they had not been robbed or held up, the defendant had said, in substance, during such conversation, that it would be an easy matter to hold them up and get their money; that, there being no saloon in Rosemont, and they sometimes having a keg or case of beer, a person could get the crowd keyed up and slip some knock-out drops in the elevator men's beer, and when they got a few drops of that down them they would be dead to the world for awhile, and it would be an easy matter to get their money; that if that failed a fellow could hold them up and get their money any way; that he could sand-bag them and hold them up. The robbery was committed by the perpetrator calling the complaining witness, one of the elevator men alluded to in the conversation just referred to, to the door of his residence shortly after dark, and under the pretense that the party had a load of grain at his elevator, induced the complaining witness to accompany the party as though going to the elevator, and when a short distance from his home was struck over the head with a bag of sand or shot, knocked down, and dragged a short distance from the road, where,

by threats to shoot, he was compelled to give up all the money he had on his person. The testimony as to the defendant's prior statements, we think, must be held to be of some probative value. The statement of the defendant as to how a robbery might be perpetrated, and the perpetration thereof by some person later on in one of the ways spoken of by the defendant, were circumstances having a legitimate bearing on the ultimate fact to be proved, which the jury were entitled to consider in determining the question of the guilt or innocence of the defendant. Standing alone, the statement could be regarded only as creating in the mind a suspicion or conjecture as to the defendant's guilt; but when considered in connection with other facts and circumstances proved, the prior conversation of the defendant relating to a plan or design for the commission of such an offense has a material bearing on the issues to be tried and determined by the jury. While it is argued that the difference in time between the conversation and the commission of the crime renders it too remote to be of any value, we can not so regard it. It is probable that the evidence would carry greater weight if close in time; yet this fact does not render the evidence inadmissible on the ground of being too remote. As is said by the supreme court of North Carolina in *State v. James,* 90 N. Car., 702, 705: "A single fact may be strong evidence; a multitude may be so slight and so slightly bearing upon each other, tending to support an allegation, that they do not altogether make evidence; a multitude of little facts and circumstances, each proving nothing in itself, taken in their relative and natural bearing upon each other, may make the strongest evidence." The prior statements of the defendant testified to by the witness, if believed by the jury, disclosed that a possible robbery of the complaining witness had been thought of by the accused, and in his mind he had evolved a plan by which the same could be accomplished, and, as he stated, quite easily. This, with what followed, was admissible in evidence under the general rule which admits the prior

statements and actions of one accused which may tend to develop a plan or design to commit the act of which he is charged. 1 Greenleaf, Evidence [16th ed.], secs. 14*k* and 162*c*. It can hardly be doubted that had the peculiar method spoken of by the defendant with reference to the use of some drug in beer drank by the elevator men been resorted to for the purpose of committing a robbery, the crime committed, and the defendant afterwards arrested, and charged with its commission, his statement as to the manner in which the crime could be accomplished, and its accomplishment in that particular manner, with other circumstances in evidence pointing to his guilt, would be a very potent factor in the final determination of the question. As presented by the record, the only difference regarding the admissibility of such evidence is in degree, or in the lack of striking peculiarity of one of the plans, and not in principle. We find no error in the admission of this testimony, and regard the statement, if believed by the jury, as a legitimate fact or circumstance to be considered by them in connection with all the other evidence in reaching a conclusion as to the defendant's guilt or innocence.

Lastly, it is argued that the evidence is insufficient to support the verdict. As a defense, the accused undertook to prove an alibi. To sustain his defense, several witnesses were produced who testified that the defendant was in Dakota county at the time the robbery was committed in Webster county, the two counties being near 200 miles apart. There is evidence of a convincing character that the defendant was arrested in Dakota county near the hour of 12 o'clock on the 6th of December, the second day following the commission of the crime, which occurred soon after dark on the evening of the 4th. Some of the witnesses for the defendant fix the time of his arrival in Dakota county on the 3d or 4th of December; possibly some of them a day or two earlier. It is conceded that he had been absent from Dakota county for two or more months immediately preceding his return early in De-

cember.  The defendant testifies that he arrived in Dakota county on the 2d.  On the other hand, the complaining witness identifies the defendant quite positively as his assailant.  Several other witnesses are equally positive that they met him on the highway going towards Rosemont on the afternoon and evening of the 4th, and within a mile or two of that place.  Other witnesses testify to having seen him in Nuckolls county on the morning of the day on which the robbery was committed in the evening.  There was also testimony tending to prove a confession made by the defendant after his arrest, and much other evidence of facts and circumstances tending to establish his identity as the perpetrator of the crime.  In view of the evidence of the very conflicting character just spoken of, much of which seemingly is entirely credible, we can not say the jury's finding of guilt is unsupported by sufficient competent evidence.  It is quite possible, if not probable, that the defendant, after the commission of the crime, may have made his way to Dakota county as rapidly as he could go, and was there immediately arrested; possibly under arrangements made with his accuser or others, for the very purpose of fortifying himself in an attempt to establish an alibi in the event he was accused of the crime of which he now stands convicted.  In no view of the record are we justified in saying that the evidence tending to establish guilt must be disbelieved, and credence given only to that which was introduced in support of an alibi.

The judgment of the district court is accordingly

AFFIRMED.

NOTE.—On the 14th day of September, 1862, Lura Villie Libbey—a girl less than ten years of age—was murdered, near the town of Strong, Franklin county, Maine. She was murdered on her way from home to Sunday school. To conceal the crime of rape was the apparent motive for the crime. She was found buried. The turf had been cut with some sharp instrument (apparently a knife) in the form of a trunk-cover. It had been turned up, and an excavation made in the uncovered section. In this hole, the body had been placed. In order to force it into the space, the knees had been stamped upon till

the bones of the legs were broken. The murderer had placed evergreens about the replaced turf to conceal the grave. But the heat of the sun had caused the transplanted shrubs to wilt, and the crime was revealed. Upon the trial of Lawrence Doyle, accused of the murder, a witness testified that Doyle had told him that, at one time, in Cape Breton, one man had murdered another and concealed the body in a manner corresponding to the method described and that the crime had never been detected. The accused had two trials, but was finally convicted. Both trials were before Walton, J. Doyle was sentenced to be hanged, but was never executed; and died of consumption in the penitentiary at Thomaston, Maine, August 8, 1869. Public opinion was divided as to his guilt. The honorable Eben F. Pillsbury, of his counsel, always mantained his innocence, and Doyle asserted it on his deathbed. Doyle was a native of Cape Breton, and about 29 years old at the time of the murder. The case is historic, as being the first trial in England or America where a defendant in a criminal case ever testified in his own behalf. Franklin B. Evans, hanged at Concord, N. H., in the winter of 1873-4, is said to have confessed the murder of the Libbey girl.—W. F. B.