STATE OF NEBRASKA, APPELLEE, V. JEFFREY DEAN KLEINBERG,
APPELLANT.

421 N.W.2d 450

Filed April 1, 1988. No. 87-501.

William L. Binkard, for appellant.

Kurt A. Hohenstein, Dakota County Attorney, Robert M. Spire, Attorney General, and Marie C. Pawol, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and RIST and CLARK, D. JJ.

BOSLAUGH, J.

The defendant, Jeffrey Dean Kleinberg, was convicted of possession with intent to distribute marijuana and sentenced to 24 months' probation. He has appealed and contends that the trial court erred in overruling his motion to suppress evidence discovered during a search of his automobile on November 25, 1986.

The record shows that on November 25, 1986, a confidential informant advised Captain John Sanders of the South Sioux City Police Department that he had observed marijuana in the trunk of the defendant's gold Buick on November 24, 1986, and that the automobile was located at 709 East 22d Street in South Sioux City, Nebraska. The informant also stated that he had spoken with the defendant, and the defendant had plans to deliver the marijuana to a person in Minnesota by 3:30 p.m. on November 25, 1986.

Having received reliable information regarding illegal activities from this informant in the past, Sanders then drove to

709 East 22d Street and observed a 1980 gold Buick Regal two-door automobile, license No. 70-L871. Sanders verified that the vehicle was registered to the defendant. Sanders then talked with Chief of Police Gene Claxton about obtaining a search warrant to search the defendant's automobile.

Sanders then went to the county attorney's office and gave the information to a deputy county attorney, who prepared an affidavit and a search warrant.

The affidavit, which was signed by Sanders, alleged that the property to be seized was "three to four clear plastic zip-lock bags, with each bag containing three pounds of marijuana, a controlled substance"; that it was under the control or custody of "Jeff Klineberg [sic], 709 East 22nd Street, South Sioux City, Nebraska"; and that it was concealed or kept in a "1980 tan to beige Buick Regal, 2 door automobile, lic. # Neb. 70-L871, whose owner is Jeff Klineberg [sic]." Finally, the affidavit set forth the facts regarding the confidential informant and his seeing the marijuana in the trunk of the defendant's automobile as well as being privy to the conversation about the anticipated delivery of the marijuana in Minnesota.

The search warrant prepared by the county attorney's office, instead of authorizing a search of the defendant's automobile as requested in the affidavit, directed Sanders to search "*Jeff Klineberg* [sic], 709 East 22nd Street South Sioux City, Nebraska, *which* is located at his residence." (Emphasis supplied.) The description of the property to be seized was identical to the description contained in the affidavit.

Unaware of the discrepancy between the affidavit and the search warrant, Sanders, Claxton, and Patrolman Adams served the warrant and the affidavit on the defendant at his home on November 25, 1986. Neither the defendant's person nor his home was searched, but only the automobile described in the affidavit, where the marijuana was found.

Following his arrest, the defendant moved to suppress the evidence seized from the trunk of his car, alleging that the search was unreasonable and not made pursuant to the search warrant.

The State filed a resistance to the motion to suppress, supported by affidavits of Sanders, Claxton, and Adams. In his

affidavit, Captain Sanders stated:

> [I]t was our intention and understanding that we were to be permitted to search the vehicle as per the affidavit and the information we had received . . . and that we reasonable [sic] relied upon our understanding of the area to be searched as included in the affidavit and complaint for search warrant . . . .
>
> . . . [W]e believed we had obtained a proper search warrant based upon an affidavit, that I relied upon the same in good faith in searching the automobile and that it was our intention to search the automobile and only the automobile at the time of the search; that we did not become aware that the search warrant did not call for a search of the automobile until long after said search had been conducted, fully believing that we had the authority to search the automobile as per the affidavit . . . .

Sanders finally stated that "I did not type any of said information on either the affidavit or search warrant, but that I did read the affidavit prior to my signing the same and found it to be valid and swore to the same . . . ."

Similarly, Chief of Police Claxton stated in his affidavit:

> [I]t was our understanding that the warrant was issued for a search of the defendant's vehicle as evidenced in the affidavit for search warrant, and is evidenced by the information the confidential informant provided us that the location of the marijuana was in the trunk of said vehicle.
>
> 6. That I, in good faith relied upon the affidavit and search warrant and did not realize that said search warrant contained language which did not specifically call for a search of the trunk, even though language in the search warrant and the affidavit specifically indicate that the location of the marijuana was in the vehicle which was searched.
>
> 7. That I did not prepare the affidavit or search warrant myself and relied upon the County Attorney's office to prepare said affidavit and upon the Court for the issuance of said search warrant; that at no time did we ever intend to search anything other than the trunk of the vehicle, and

we in good faith, relied upon the affidavit and search warrant in searching said trunk.

8. That I did not become aware that there was a discrepancy in the search warrant until long after said search had been conducted.

Finally, Patrolman Adams stated:

I did not participate in the preparation of the affidavit or the search warrant and my only knowledge was received from Captain Sanders and Chief of Police Gene Claxton that we were to search a vehicle owned by Jeffrey Kleinberg, for marijuana contained in the trunk; that I at no time had any knowledge that we were to search anything other than said vehicle and I, in good faith believed that said search warrant allowed for a search of said vehicle; I did not read or review such search warrant prior to said search, but in good faith believed that said search warrant called for a search of said vehicle and nothing else.

The trial court found that the officers executing the warrant had acted in good faith and that the discrepancy between the affidavit and the warrant regarding the place to be searched was the result of an inadvertent scrivener's error, and overruled the motion to suppress.

The trial was to the court, with the case submitted on affidavits and stipulations of the parties, and with the defendant renewing his objection to the evidence seized during the search of his automobile. The trial court sentenced him to 24 months' probation.

All of the assignments of error relate to the ruling on the motion to suppress. The defendant argues that the search of his automobile was illegal because the warrant authorized only a search of his person.

A number of cases have held that an inadvertent defect in a search warrant may be cured by reference to the affidavit used to obtain the warrant if the affidavit is incorporated in the warrant or referred to in the warrant and the affidavit accompanies the warrant.

In *State v. Carson*, 482 So. 2d 405, 406 (Fla. App. 1985), the court held: "An affidavit may cure a defective search warrant

where the affidavit is (1) incorporated into the warrant by express reference; and (2) physically attached to the warrant." (Citation omitted.)

The court found that the purpose of the attachment requirement is to make

> "the affidavit of probable cause immediately available to the person whose premises are entered, and explains to him at the outset the reason for this intrusion on his privacy. And it avoids any possible claim or suspicion by the citizen involved that the affidavit later located in the official file was inserted after the fact of the search."

(Citation omitted.) *Id.* at 406-07.

In *Bloom v. State*, 283 So. 2d 134, 136 (Fla. App. 1973), the court held:

> Some decisions, however, have permitted an affidavit to cure a defective search warrant where the affidavit and the search warrant are such that they can be reasonably said to constitute one document. Two requirements must be satisfied to reach this result: first, the affidavit and search warrant must be physically connected so that they constitute one document; and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference.

In *People v. Fragoso*, 68 Ill. App. 3d 428, 386 N.E.2d 409 (1979), the warrant listed a street address as the place to be searched, but failed to specify the city, county, or state of the search. The court held: "Errors in addresses and, indeed, omissions as to portions of addresses are not *per se* fatal to the validity of a warrant," *id.* at 432, 386 N.E.2d at 413, and that reference to the supporting affidavit "as a factor in determining the validity of a search warrant is clearly permissible where the affidavit is attached to the warrant, incorporated by reference, or as is the case here, where the officer who signed and swore to the affidavit also executed the search warrant." *Id.* at 433, 386 N.E.2d at 413.

In *United States v. Hayes*, 794 F.2d 1348 (9th Cir. 1986), the defendant challenged warrants for a search of his medical offices as unconstitutionally overbroad. The court considered the question of whether affidavits could be considered to

determine whether a search warrant lacked particularity and found that "[A]n affidavit may be relied on to provide the requisite particularity in an otherwise overbroad warrant only 'if (1) the affidavit accompanies the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit therein.' " *Id.* at 1354, citing *United States v. Hillyard*, 677 F.2d 1336 (1982). Additionally, the court held: "The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion and to inform the person subject to the search what items the officers executing the warrant can seize." 794 F.2d at 1355.

In *Rickert v. Sweeney*, 813 F.2d 907 (8th Cir. 1987), IRS agents executed a search warrant which authorized them to seize almost anything imaginable—records, papers, documents, ledgers, telephone books, computer hardware, checks, money orders, etc.—for a period from January 1, 1980, to April 30, 1986. The affidavit in support of the warrant was not provided to the appellant at the time of the search because it had been sealed as confidential by the district court. In discussing whether reference can be made to an affidavit to cure a defect in a warrant, the court said:

> An affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant. . . . Sufficient particularity may also be provided even if the affidavit is merely present at the search. . . . In any event, some measure must be taken not only to limit the discretion of the executing officer but also to inform the subjected person what the officers are entitled to take.

(Citations omitted.) *Id.* at 909.

Although the affidavit provided the necessary restrictions on the search, the warrant was held to be invalid because the affidavit was not incorporated in the warrant nor present at the scene of the search.

In *United States v. Bonner*, 808 F.2d 864 (1st Cir. 1986), the warrant was defective because the address of the premises to be searched was omitted. The affidavit, however, contained a detailed physical description of the premises, which, except for the address, appeared in the warrant. The court characterized the defect as a "minor, technical omission," and stated:

The agents, having previously conducted the surveillance, knew exactly which house they wanted to search, described it accurately and in detail in their affidavit, and searched only that house without delay after the warrant issued. We hold that the Bonner residence was described with sufficient particularity, and although the address was inadvertently omitted, there was no reasonable probability that another premises might be mistakenly searched; thus, the search warrant was valid.

*Id*. at 866-67. See, also, *State v. Schaffer*, 112 Idaho 1024, 739 P.2d 323 (1987); *State v. Tramantano*, 28 Conn. Supp. 325, 260 A.2d 128 (1969); *Commonwealth v. Truax*, 397 Mass. 174, 490 N.E.2d 425 (1986); *United States v. Strand*, 761 F.2d 449 (8th Cir. 1985).

In this case the warrant referred to the affidavit, and the affidavit accompanied the warrant and was served on the defendant at the same time as the warrant. Under these circumstances, the affidavit may be used to cure the defect in the warrant resulting from the error of the scrivener.

The facts in this case also establish that the officers acted in good faith in executing the warrant and were not aware of the defect in the warrant until long after the search had been completed.

In *Massachusetts v. Sheppard*, 468 U.S 981, 104 S. Ct. 3425, 82 L. Ed. 2d 737 (1984), the warrant was defective because it failed to particularly describe the items to be seized. The affidavit, however, listed the items to be seized, and the search was limited to the items listed in the affidavit. The U.S. Supreme Court held that the evidence should not be suppressed, even though seized pursuant to a defective warrant, because the officers had acted in good faith in executing what they reasonably believed was a valid warrant. See, also, *United States v. Clement*, 747 F.2d 460 (8th Cir. 1984).

In *United States v. Bonner, supra,* the court held, also, that the evidence seized pursuant to the warrant was admissible under the good faith exception. In that respect the court said:

In the instant case, the agents also took every step that could reasonably be expected of them. An affidavit was prepared and presented to a neutral magistrate. After

grammatical corrections were made by the magistrate, who concluded that probable cause was established, the search warrant was issued, with the detailed physical description of the premises taken from the affidavit attached onto the warrant. At this point, the agent had an objective, reasonable basis to believe that the fourth amendment's warrant requirement was satisfied.. The responsibility for the inadvertent omission of the address on the warrant itself, must be borne by the magistrate, as the final reviewing authority. And, as the exclusionary rule does not serve to deter the errors of judges, but rather the errors of police officers, this court must conclude that it is inappropriate here. *Leon,* 468 U.S. at 916, 104 S.Ct. at 3418.

808 F.2d at 867.

In this case the trial court found specifically that the officers acted in good faith.

"In determining the correctness of a trial court's ruling on a motion to suppress evidence, the Supreme Court will not overturn the trial court's findings of fact unless such findings are clearly erroneous." *State v. Bonczynski,* 227 Neb. 203, 205, 416 N.W.2d 508, 510 (1987); *State v. Brown,* 225 Neb. 418, 405 N.W.2d 600 (1987); *State v. Vrtiska,* 225 Neb. 454, 406 N.W.2d 114 (1987). As we view the record, the trial court's findings regarding the validity of the search and the overruling of the defendant's motion to suppress were not clearly erroneous.

The judgment is affirmed.

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent. I recognize the existence of the law set out in the majority opinion concerning the ever-increasing extension of the meaning of search warrants by referring to the affidavit of the officer seeking the warrant, and the growing reliance on the "good faith" of the officer, rather than on the words actually signed by an impartial magistrate authorizing an invasion of an individual's rights. I believe, however, that we should go no further than absolutely necessary in approving the extension of the invasions of constitutionally protected privacy. To do otherwise is to handle constitutional rights too cavalierly.

The affidavit herein states that the contraband property sought is

> concealed or kept in, on, or about the following described place or person, to wit: in a 1980 tan to beige Buick Regal, 2 door automobile, lic. # Neb. 70-L871, whose owner is Jeff Klineberg [sic]; *that said property* is under the control or custody of Jeff Klineberg [sic], 709 East 22nd Street South Sioux City, Nebraska; *and is located at his residence.*

(Emphasis supplied.) The officer has sworn that the contraband is located in two different places: in a described car and in a described residence.

The issuing magistrate signed a search warrant, which included the following authorization: "You are therefore commanded, with the necessary and proper assistance, to search the following described place or person, to-wit: Jeff Klineberg [sic], 709 East 22nd Street South Sioux City, Nebraska, which is located at his residence."

The majority opinion lifts the prosecuting authorities up by their own bootstraps to determine the meaning of the search warrant by relying on the understanding of those who served the warrant, not by relying on the language within the four corners of the warrant itself. The magistrate was confronted with conflicting factual allegations that must be deciphered. After being told by sworn affidavit that the contraband was located both in defendant's car and in defendant's residence, the magistrate authorized the search of defendant himself, and included the unnecessary words "which is located at his residence." The trial judge, and the majority in this court, find it necessary to determine that "which" must mean "which vehicle." I submit it is just as accurate to say that "which" refers to "which property" (which the officer has sworn is "located at his [defendant's] residence"). Constitutional rights should not hang by such a grammatical thread.

The majority, without giving weight to what the magistrate signed, tells us that because the officers believe they could search the defendant's car, they may so search. I fear the logical followup to this case is to require that officers seeking a search warrant need only allege any number of facts in the affidavit

and then ignore the specific authorization given to them by an impartial magistrate, and do what the officers want to do. It seems we are relieving the magistrate from intelligently issuing search warrants and reducing the function of the magistrate to a ministerial office.

If officers submitting an affidavit are entitled to rely in every case on all the terms of the affidavit, rather than the terms of the search warrant, such officers are entitled to assume they have far more power than the issuing magistrate and that the magistrate would not dare to issue a lesser warrant and thus limit the authority the officers seek.

If the warrant had been examined and served as written, and assuming no marijuana was found on defendant's person (a fact we do not know from the record), there would be time to process a warrant authorizing the search of the residence or the car in further search for the contraband.

I see no need, in this case, to conclude that the county attorney and the issuing magistrate had no idea what they were doing in preparing and signing documents seeking and authorizing invasion of a person's privacy. If the county attorney did not know what he was seeking where, I see no need to aid him in confusing the magistrate.

I believe the evidence seized under the warrant in question should have been suppressed and that, without such evidence, defendant's guilt has not been proved beyond a reasonable doubt. I would reverse and dismiss.

CAPORALE, J., joins in this dissent.