STATE OF NEBRASKA, APPELLANT, V. MARTIN WALTERS, APPELLEE.

432 N.W.2d 528

Filed December 2, 1988.   No. 88-676.

Mark J. Young, Deputy Hall County Attorney, for appellant.

Barry Waid, Hall County Public Defender, for appellee.

SHANAHAN, J.

In its information, the State charged Martin Walters with receipt and retention of stolen property. See Neb. Rev. Stat. § 28-517 (Reissue 1985). The district court for Hall County sustained Walters' motion for suppression of physical evidence, which the police obtained by a warrant-authorized search, and Walters' statements at police headquarters after the search in question. The State appeals from the suppression order for review by a judge of this court, pursuant to Neb. Rev. Stat. § 29-824 (Reissue 1985).

On March 17, 1988, Capt. Kyle Hetrick of the Grand Island Police Department received a telephone call from an unidentified informant who stated that Walters had offered to sell the informant a Fender guitar, a cassette player, and a Suzuki keyboard, which matched the description of property recently taken in local burglaries. The informant did not know the exact address of Walters' apartment, where the informant had indicated the stolen property was located, but, according to Hetrick, described Walters' residence: "[The informant said] it was on the — It was an apartment building on the northeast corner of 6th and Walnut. He advised the apartment was on the main floor and he didn't know the number, but he said, 'You walk in, and it's the first door on the left.' "

The next day, Captain Hetrick drove to the area described by the informant and ascertained the address of the building in which he believed Walters resided. Captain Hetrick then spoke with the apartment manager, Rudy Plate, who informed Hetrick that Walters did indeed rent a unit in the described building. Plate, however, was uncertain about the precise identifying number assigned to Walters' apartment. As related by Hetrick:

> [Plate] told me that it was Apartment 2 or 4, but he wasn't sure because he manages so many apartments, but he also described it as the first apartment — or he described it as being on the main floor. He didn't know if it was the first one on the left, but he described it as being on the main floor.

Nothing indicated how many apartment units were contained within the building located at 324 West 6th Street.

On March 18, Hetrick applied for a search warrant and supported the application by his affidavit, which contained the location of Walters' apartment according to the description given by the informant, namely, "Northeast corner of 6th and Walnut, main floor with the entrance to his [Walters'] apartment on the immediate left as you enter the foyer . . . ." In his affidavit, Hetrick further stated: "[T]he manager of that apartment house, Rudy Plate, has advised that a Martin Walters lives at 324 West 6th, Apartment #2 . . . ." Hetrick's affidavit did not reflect Plate's uncertainty or alternative indication concerning the number for Walters' apartment. At the suppression hearing, Hetrick testified: "I just neglected to put that [Plate] had told me 2 or 4." On the basis of Hetrick's affidavit, the county court issued a warrant authorizing the search of "324 West Sixth Street, Apartment 2."

Accompanied by three other police officers, on March 18, Captain Hetrick then proceeded to the building described in the search warrant. As he entered the building, Hetrick noticed that the door to the apartment on his left was partially open. Although Hetrick saw the apartment clearly bore "1" on its door, Hetrick approached the apartment, knocked at the open door, and asked the individuals inside whether the apartment was the Martin Walters residence. A male occupant answered

"yes" and shortly thereafter identified himself as Martin Walters. After giving Walters a copy of the search warrant, Hetrick and the other officers commenced their search, during which the officers discovered and seized a guitar, a cassette player, a keyboard, and a videocassette player and tapes, all of which had been reported stolen in various burglaries in the area.

When the officers searched Walters' apartment, no one lived in apartment 2, which was located on the second floor of the apartment building.

Several hours after the search, and in response to Hetrick's request, Walters went to the police station, where, after receipt of the *"Miranda* warning," see *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), Walters admitted his possession of stolen property and was subsequently charged with receiving and retaining stolen property. Before trial, Walters filed a motion

> to suppress the fruits of the search and seizure and subsequent arrest made . . . for the reason that the search and seizure and arrest were made without probable cause or without benefit of a proper warrant and were unreasonable within the meaning of the 4th Amendment to the United States Constitution.

On the basis of the foregoing evidence, the district court sustained Walters' suppression motion.

The State contends that the search warrant for Walters' apartment was valid and Walters' statements to the police were not the "fruit of the poisonous tree," that is, were not the product of a constitutionally invalid search of Walters' apartment.

"In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous." *State v. Copple*, 224 Neb. 672, 689, 401 N.W.2d 141, 154 (1987).

"In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the 'trier of fact' and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress." *State v. Dixon*,

222 Neb. 787, 795, 387 N.W.2d 682, 687 (1986).

To support its contention that the search warrant is valid, the State relies on *Maryland v. Garrison*, 480 U.S. 79, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987). In *Garrison*, Baltimore police officers obtained a warrant to search the third-floor apartment of one Lawrence McWebb, who was believed to be involved in the distribution of controlled substances. Officers correctly stated the address and location of McWebb's apartment, and "reasonably believed that there was only one apartment on the premises described in the warrant." 480 U.S. at 80. In the midst of their search authorized by the warrant, police discovered that the third floor of the building actually contained two separate apartments. As soon as the officers discovered that the third floor contained two apartments, they stopped their search. However, before discovering the two-apartment situation on the third floor, the police saw and seized heroin, cash, and drug paraphernalia in Garrison's apartment. Garrison was convicted of possession of heroin with intent to distribute that narcotic.

Thus, in *Garrison*, the issue before the Supreme Court was whether a warrant-authorized search of a place, which was more broadly described than was appropriate for the warrant, "invalidated a warrant that undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan." 480 U.S. at 85.

The Court in *Garrison* stated:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. . . .
>
> In this case there is no claim that the "persons or things to be seized" were inadequately described or that there was no probable cause to believe that those things might

be found in "the place to be searched" as it was described in the warrant. With the benefit of hindsight, however, we now know that the description of that place was broader than appropriate because it was based on the mistaken belief that there was only one apartment on the third floor of the building at 2036 Park Avenue. The question is whether that factual mistake invalidated a warrant that undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan.

Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant. But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate. . . . [T]he warrant, insofar as it authorized a search that turned out to be ambiguous in scope, was valid when it issued.

. . . If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously

included within the terms of the warrant. . . .

. . . .

. . . [T]he validity of the search of [Garrison's] apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable. Here it unquestionably was. The objective facts available to the officers at the time suggested no distinction between McWebb's apartment and the third-floor premises.

For that reason, the officers properly responded to the command contained in a valid warrant even if the warrant is interpreted as authorizing a search limited to McWebb's apartment rather than the entire third floor. Prior to the officers' discovery of the factual mistake, they perceived McWebb's apartment and the third-floor premises as one and the same; therefore their execution of the warrant reasonably included the entire third floor. Under either interpretation of the warrant, the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment.

*Maryland v. Garrison*, 480 U.S. 79, 84-89, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987), involved a warrant description which was too comprehensive inasmuch as the description covered not only the named suspect's apartment, but also the living quarters of another. *Garrison*, however, seems far from controlling and is clearly factually distinguishable from Walters' case. In Walters' case, excessive inclusion is not a problem; rather, the warrant inaccurately stated Walters' apartment number. In view of the record presented in Walters' case, two inquiries are important: First, does the warrant describe with particularity the place to be searched? Second, what impact does Captain Hetrick's affidavit, which misstated information given to him by the apartment manager, have on the validity of the warrant?

## PARTICULARITY OF DESCRIPTION

The fourth amendment's warrant clause forbids the issuance of warrants except those "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const.

amend. IV. A description in a search warrant is sufficient if the officer, equipped with the search warrant, can, with reasonable effort, ascertain and identify the place to be searched. *Steele v. United States No. 1*, 267 U.S. 498, 45 S. Ct. 414, 69 L. Ed. 757 (1925).

The test to determine the sufficiency of a search warrant's description of the place to be searched is whether the description provides sufficient particularity to enable the executing officer, with reasonable effort, to locate and identify the site to be searched, and whether there is any reasonable probability that the other premises might be mistakenly searched pursuant to the warrant. *United States v. Gitcho*, 601 F.2d 369 (8th Cir. 1979).

In *State v. Kleinberg*, 228 Neb. 128, 421 N.W.2d 450 (1988), a five-judge panel, which included three judges of this court (two of whom dissented), considered a situation where a warrant was issued to search Kleinberg's person, but the officer's affidavit, supporting issuance of the warrant, contained only information that Kleinberg's automobile was the site of contraband. Equipped with a search warrant, officers proceeded to search Kleinberg's car, notwithstanding that the warrant directed search of Kleinberg's person, and discovered contraband which served as the basis for conviction of Kleinberg. In a 3-to-2 opinion, the majority stated:

> In this case the warrant referred to the affidavit, and the affidavit accompanied the warrant and was served on the defendant at the same time as the warrant. Under these circumstances, the affidavit may be used to cure the defect in the warrant resulting from the error of the scrivener.

*Id.* at 134, 421 N.W.2d at 454. Two judges of this court dissented, stressing that the circumstances demanded an application for a warrant to search Kleinberg's automobile when officers did not find contraband on Kleinberg's person. Thus, *Kleinberg* relates to a search warrant's nonconformity to the affidavit supporting issuance of the warrant and, consequently, affords no assistance in a case such as Walters' where the search warrant and supporting affidavit conformed with each other but failed to comport with actuality, namely, the correct address for Walters' residence.

In the present case, both the warrant and supporting affidavit incorrectly described Walters' apartment as No. "2," whereas the apartment number was "1."

Even if the numerical address is wrong, the warrant may still be valid if the description is adequate to direct the officer to the correct place for the search. *56,700 Dollars in U.S. Currency v. State*, 710 S.W.2d 65 (Tex. App. 1986). As expressed in 2 W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 4.5(a) at 212-13 (2d ed. 1987):

> Thus, the name of an apartment complex or business enterprise will prevail over a street address, as will a detailed physical description which speaks to the precise location or appearance or character of the premises. Similarly, the name of the occupant of an apartment will prevail over the stated apartment number or floor.

In *United States v. Clement*, 747 F.2d 460 (8th Cir. 1984), the court upheld a search of defendant's apartment 3, although the warrant authorized a search of apartment 4. After noting that the officers who executed the warrant knew where the defendant's apartment was, the court concluded that "there was no probability of a mistaken search, and we cannot conclude that the inaccurate address in the warrant should operate to invalidate the search." *Id*. at 461.

In *United States v. Gitcho, supra* at 371-72, the court stated:

> Other factors which have been cited in upholding searches made pursuant to search warrants which contained some inaccuracies in the description of the premises to be searched are that the address given in the warrant, even if incorrect, still describes the same piece of property . . . that the premises intended to be searched are adjacent to those described and all are under the control of the defendant . . . that the incorrect address describes a place not in existence, or that other parts of the description which are correct limit the place to be searched to one place . . . and that the premises which were intended to be searched had previously been surveilled or were being surveilled while the warrant was obtained.

(Citations omitted.) Accord, *Mansell v. State*, 756 S.W.2d 95 (Tex. App. 1988); *Carr v. State*, 529 So. 2d 805 (Fla. App.

1988); *United States v. Burke*, 784 F.2d 1090 (11th Cir. 1986); *State v. Sanders*, 155 Ga. App. 274, 270 S.E.2d 850 (1980) (incorrect hotel room number); *Com. v. Petrone*, 17 Mass. App. 914, 455 N.E.2d 1227 (1983). For cases invalidating warrants under similar circumstances, see, *State v. Manzella*, 392 So. 2d 403 (La. 1980), and *State v. Morales*, 395 N.W.2d 655 (Iowa App. 1986).

The above-stated factors are merely constituents in a larger inquiry, namely, whether a description in a search warrant enables officers to locate and identify the particular premises to be searched. In Walters' case, both the apartment manager and the informant accurately described the location of Walters' apartment unit. The manager stated that Walters' apartment was on the main floor. There was only one apartment on the main floor. The informant supplied an even more detailed description of the precise location of Walters' apartment. Furthermore, the supporting affidavit for the search warrant manifests that Hetrick was seeking authorization to search the apartment of Walters, a fact which Hetrick confirmed before serving the warrant and searching apartment 1. While the warrant misidentifies the apartment number, information in the affidavit makes it clear that Hetrick intended to search Walters' apartment, which was "on the immediate left as you enter the foyer." Such particularity prevented a general search of the apartment building. Furthermore, no one lived in apartment 2 when the search in question occurred. Thus, there was only a very remote or extremely slim possibility that Hetrick would mistakenly search a residence other than Walters'.

Consequently, Walters' case presents an issue of first impression in Nebraska. Neither counsel's nor my research has disclosed a decision of the U.S. Supreme Court which is specifically based on the precise constitutional point involved in Walters' case or an opinion of the U.S. Supreme Court which supplies inescapable inferences or compelled conclusions concerning the fourth amendment question raised in this appeal. Research has failed to provide an opinion by the U.S. Supreme Court, on the particular fourth amendment question involved in this appeal, which may serve as an appropriate

analog to dispose of the question raised in the present appeal. In the absence of controlling precedent by the U.S. Supreme Court or this court, the fourth amendment question in Walters' case necessitates review and resolution by the entire Supreme Court of the State of Nebraska.

## SUFFICIENCY OF THE AFFIDAVIT

What is clear from our cases is that factual inaccuracies in the affidavit, even those which result from deliberate falsehoods on the part of the officer, do not automatically vitiate the warrant. A claim that a search warrant's supporting affidavit is insufficient due to a falsehood or a statement with reckless disregard for the truth is not sustained when the affidavit supports a finding of probable cause after elimination of the questioned information. *State v. Robish*, 214 Neb. 190, 332 N.W.2d 922 (1983). See, also, *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Without again setting forth the contents of the affidavit, the description of the location of Walters' apartment was sufficient to supply probable cause to issue the warrant, even when the incorrect apartment number is disregarded.

Under the circumstances, I conclude that, for the purpose of this appeal, the district court was clearly erroneous in its suppression of evidence in Walters' case. Therefore, the district court's judgment is reversed.

REVERSED.