[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO SUPPRESS
In these cases, the defendants, who are charged with narcotics violations,[1] seek to suppress the fruits of a search of their home. The search was conducted by officers assigned to the Statewide Narcotics Task Force under the authority of a warrant issued on August 22, 1989. The applicants for the warrant, the affiants on the underlying affidavit, were Trooper Norcia and Detective Pompano. The defendants' claim is that the warrant was void because its description of the premises to be searched failed to meet constitutional standards.
At an evidentiary hearing, the court received testimony from the defendants, Trooper Norcia, Detective Pompano and Inspector Solomita of the Waterbury State's Attorney's office. Also documentary evidence was submitted by both the defendants and the State. Presented by the defendants were a letter and a copy of an assessment CT Page 151 card from the Naugatuck assessor's office, a map of the Platts Mill Road area, and copies of all the warrant papers. Submitted by the State were a map of Naugatuck area streets and a videotape of the Platts Mill Road area that Inspector Solomita had prepared.
 I
From the testimonial and documentary evidence, the court finds that the facts set forth below were established.
On August 31, 1989, when the warrant was executed, the defendants resided at 101 Platts Mill Road in Naugatuck and had lived there for several years. Their house is a distinctive one in the neighborhood, being a large two-story victorian structure that at one time had been used as a convalescent home. A distinguishing feature of the house is a boarded up door on the front facade of the second floor with no outside stairway. The house was used as a one-family dwelling and occupied by Davino, DeBarros and Davino's children. In front of the house was a mailbox with the defendants' names and the number 101 on it.
The house lot extended from Platts Mill Road to Radnor Avenue. As positioned on the lot, the house was approximately 60-75 feet from Platts Mill Road and approximately 150 feet from Radnor Avenue. On the east side of the house was a paved driveway running the length of the lot and providing ingress from and egress to both streets. The Radnor Avenue end of the driveway was erected between utility poles #522 and #523.
The front door on the first floor of the house was kept locked and not used by the occupants. One of Davino's children occupied the front room on the first floor as a bedroom. Entry into the house was by a door on the east side adjacent to the driveway.
Prior to August 10, 1989, Trooper Norcia had conducted surveillances of the house on at least six occasions. On some of these occasions, Trooper Norcia was accompanied by Officer Murillo. Detective Pompano had also participated in surveillances and had seen the mailbox in front of the house. Pompano resided in Naugatuck about one mile from Platts Mill Road. In June, 1981, Pompano had been inside the house when he brought his brother there for a party. At the time, the house was occupied by a family named Elderkin. The documentation sent by the Naugatuck assessor's office on November 30, 1989, and placed in evidence by the defendants, lists Robert C. Elderkin as the owner of the property.
On August 10, 1989, there was a "controlled buy" at the house. The informant entered the property from Radnor Avenue. The controlled buy was surveilled by Trooper Norcia and Officer Murillo. Before obtaining the warrant, Detective Pompano performed a CT Page 152 security check. He made inquiry of the Naugatuck assessor's office, the Southern New England Telephone Company and the post office. He learned the name of the owner and that the telephone was listed in the name of Michelena Davino.
In preparing the papers, Trooper Norcia wrote things out on a yellow legal pad. Then she and Detective Pompano "split" the typing. He typed pages 1 and 5 which are the application for the warrant and the warrant itself. In both instances, the property was described as follows:
 The residence at #121 Platts Mill Road, Naugatuck, Connecticut, described as being a two story multi family dwelling with only occupants living on the first floor. The second floor of this dwelling is currently being used for storage by the occupants on the first floor and is accessible at all times to the first floor occupants. The house is beige in color with brown trim and is located on the east side of Platts Mill Road with a paved driveway approximately seventy-five feet north of Willow Lane. This house is set back approximately one hundred fifty feet off the roadway with the driveway located between utility poles #522 #523.
In the five paragraph affidavit which was typed by Trooper Norcia, the premises to be searched are referred to as both 101 Platts Mill Road and 121 Platts Mill Road. Paragraph 2 of the affidavit recites in part that:
 Michelena Davino resides at #101 Platts Mill Road in Naugatuck, Connecticut with a black male known as "Pete". . . . The informant further stated that Michelena Davino and "Pete" have use of the second floor of their residence at #121 Platts Mill Road in Naugatuck, Connecticut. . . .
Paragraph 3, describing Pompano's security check, and Paragraph 4, describing the controlled buy, however, identify the property by its correct address 101 Platts Mill Road.
Both affiants testified that "121" was a typographical error. There was no address known as 121 Platts Mill Road.
After the warrant was signed, Trooper Norcia led the search party. Officer Murillo and Detective Pompano followed in other cars. On arriving at the premises, Trooper Norcia went to the same door of the house that she had seen the informant use. In the Statewide Narcotics Task Force, the officers who obtain search warrants always execute them.
There are also disputes concerning the colors of the house and CT Page 153 the use of utility poles #522 and #523 as proper locators. The application, affidavit and warrant describe the house as beige with brown trim. The defendants testified that the house was light yellow with black trim and needed a painting. Inspector Solomita walked through the area on February 3, 1990, carrying a videocamera. In the film, the colors are dull and from watching the film it cannot be determined whether the colors were as testified to by the defendants or as stated in the warrant, the application or the underlying affidavit.
The heretofore mentioned two utility poles as locators are included in both the application and the warrant. Neither document places the poles on Radnor Avenue. What the warrant (and the application) does recite is that the house has "a paved driveway approximately seventy-five feet north of Willow Lane [and that] this house is set back approximately one hundred fifty feet off the roadway located between utility poles #522 and #523" Willow Lane intersects with Radnor Avenue and does not go through to Platts Mill Road. On February 3, 1990, when Inspector Solomita took his walk, he had a copy of the search warrant papers. Inspector Solomita went to the intersection of Willow Lane and Radnor Avenue and from there he had no difficulty in locating the two poles.
The fourth amendment to the Constitution of the United States provides in part that "no warrants shall issue, but. . . particularly describing the place to be searched, and the persons or things to be seized." Likewise, Articles first seven of the Constitution of Connecticut States that "no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be." In fourth amendment jurisprudence, the particularity requirement as to place is governed by the following statement from Steele v. United States No. 1, 267 U.S. 498, 45 S.Ct. 414,69 L.Ed. 109 (1925).[2] "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." 267 U.S. at 503. And neither the State nor the defendants have offered any suggestion of differing treatment for the comparable language in the Connecticut constitution.
What the statement from Steele v. United States, supra, means is that an error in description is not automatically fatal. United States v. Prout, 526 F.2d 380, 387 (5th Cir.) cert. denied 429 U.S. 840,97 S.Ct. 114, 50 L.Ed.2d 109 (1976). Rather, the test for determining the sufficiency of the description of the place to be searched is whether the place is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched. United States v. Gitcho, 601 F.2d 369, 371 (8th Cir. 1979). In this case, the fact that there was no 121 Platts Mill Road CT Page 154 effectively forecloses that probability.
Three purposes have been identified as standing behind the constitutional requirement of particularity in description: (1) to prevent general searches; (2) to prevent the seizure of objects in the mistaken belief that they are within the scope of the issuing magistrate's order; and (3) to prevent the issuance of warrants on vague or doubtful factual bases. State v. Santiago, 8 Conn. App. 290,304 (1986). Viewing the particularity requirement in the light of its three purposes has led courts to recognize an exception to the general rule that the warrant itself must describe with sufficient particularity the place to be searched and the items to be seized. If the description in the warrant is inadequate, a reviewing court may look to the description appearing in the warrant application or affidavit if it is clear that the executing officers were in a position to be aided by these documents, as where they were attached to the warrant and incorporated therein by reference. Id. at 304-05.
In the present case, the warrant certainly incorporates by reference the contents of the application and affidavit. The warrant begins by referring to "the foregoing application and affidavit." The warrant then continues with "[f]rom said affidavit, the undersigned finds that there is probable cause . . . to believe that the property described . . . is within or upon . . . the place . . . described in the foregoing affidavit and application." Problems, however, exist with applying this exception to the general rule. From a reading of the affidavit, it is unclear whether "101" or "121" was the correct address for the parties' residence. The application, as well as the warrant, mentions only the incorrect address of 121 Platts Mill Road. Further, it is doubtful that the application and affidavit were attached to the warrant when it was executed. In this regard, the evidence is that the issuing judge, upon application by the affiants, dispensed with the requirement that a copy of the affidavit be given to the occupants within forty-eight hours of the search. See General Statutes Section 54-33c. If the two addresses in the affidavit were the only factors for consideration, the court would grant the defendants' motions, but there is more.
The affidavit also recites that during the week of August 10, 1989, there was a controlled buy at 101 Platts Mill Road under the surveillance of Trooper Norcia. Testimony established other surveillances by Norcia, Pompano and Murillo. In short, officers who had watched the house at 101 Platts Mill Road were the affiants and the executors of the warrant. "Courts have taken into account facts known by the executing officer but not specifically stated in the affidavit as where the executing officer was also the affiant and the affidavit shows that the affiant had previously been to the premises intended to be covered by the warrant." 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (2d Ed. 1987) Section 4.5(a). CT Page 155
The statement from Steele v. United States, supra, has been described as embodying a rule of practical accuracy rather than technical nicety. United States v. Gomez, 42 F.R.D. 347 (S.D. N.Y. 1967). Where an incorrect street address has appeared in a warrant, courts have upheld searches based on the familiarity of the executing officers with the intended location of the search. See e.g. United States v. Prout, supra at 388; State v. Walters, 230 Neb. 539,432 N.W.2d 528, 534 (1988); Gumina v. State, 166 Ga. App. 592,305 S.E.2d 37, 38-39 (1983); State v. Daniels,217 A.2d 610, 615 (N.J. 1966); United States v. Pisano,191 F. Sup. 861 (S.D. N.Y. 1961). Three factors considered to be important by United States v. Gitcho, supra at 371-72, are all present here — the incorrect address describes a place not in existence; the other parts of the description in the affidavit which are correct, limit the place to be searched to the defendants' residence; and, most important, the premises intended to be searched had previously been surveilled by the officers who executed the warrant. Accordingly, the motions to suppress are denied.
BARNETT, J.