## OSCAR W. VANDERPOOL V. STATE OF NEBRASKA

FILED DECEMBER 29, 1926. No. 25320.

1. Evidence examined, and *held* sufficient to submit to the jury the question of the guilt or innocence of the accused.

2. Witnesses: CROSS-EXAMINATION: IMPEACHMENT. Under section 8848, Comp. St. 1922, providing that a witness may be interrogated as to his previous conviction for a felony, but that no other proof is competent except the record thereof, a defendant in a criminal prosecution becoming a witness in his own behalf may be asked on cross-examination whether he has previously been convicted of a felony, and if he answers in the affirmative further examination along that line should cease. If he answers in the negative, he may be impeached only by the record of his conviction.

3. ———: ———: ———. When a defendant in a criminal prosecution becomes a witness in his own behalf and on cross-examination, in response to any inquiry by the county attorney made under the provisions of section 8848, Comp. St. 1922, admits that he has previously been convicted of a felony, it is error for the court to permit the county attorney, over objections, to inquire as to the character of the offense or to permit the record of the conviction to be introduced.

4. Criminal Law: ACCUSED AS WITNESS: CROSS-EXAMINATION. Under the record in this case, *held*, it was prejudicial error to permit the county attorney to inquire into details or to introduce in evidence the record of previous conviction of defendant after he had admitted conviction of a felony.

5. ———: ———: INSTRUCTIONS. It is the better practice for the court, even when no request is made, to instruct the jury that evidence as to the previous conviction of the accused of a felony is to be considered as affecting his credibility as a witness, and not as tending to prove the crime charged.

6. Witnesses: COLLATERAL MATTERS: IMPEACHMENT. "When a witness is cross-examined on a matter collateral to the issue. he cannot, as to his answer, be subsequently contradicted by the party putting the question." *Johnston v. Spencer*, 51 Neb. 198.

7. ———: ———. "The test of whether a fact inquired of in cross-examination is collateral is, would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea?" *Johnston v. Spencer*, 51 Neb. 198.

ERROR to the district court for Gage county:   WILLIAM
J. MOSS, JUDGE.   *Reversed.*

*Guy T. Tou Velle,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard   before   ROSE,   DEAN,   DAY,   THOMPSON   and
EBERLY, JJ.

DAY, J.

Oscar W. Vanderpool, hereinafter designated as defend-
ant, was convicted in the district court for Gage county
of an assault upon one L. E. Shurtleff with intent to inflict
great bodily injury.   By the judgment of the court, he was
sentenced to serve a term of three years in the penitentiary.
Alleging there was error upon the trial, defendant, as plain-
tiff in error, has brought the record of his conviction to
this court for review.

It is first urged by defendant that the evidence is in-
sufficient to sustain the verdict and the judgment.   It ap-
pears that on the afternoon of December 10, 1925, defend-
ant drove his automobile into the barnyard of one Lee
Feerhusen, turning his car around so as to face the gate
leading into the premises.   He was alone and had 30 gal-
lons of rye whiskey in his car.   As he sat in his car, he en-
gaged in conversation with Mrs. Feerhusen, and, among
other things, stated that he had heard the officers had
searched their place and asked if it were true.   He was told
they had.   After some general conversation, defendant said
to Mrs. Feerhusen:   "If any one drives in, you go to the
house."   A few minutes later, L. E. Shurtleff, deputy sher-
iff, and Richard Steele, his assistant, who had suspected
that defendant was engaging in the unlawful sale of in-
toxicating liquor and had been trailing him most of the
day, drove into the yard.   According to the state's testi-
mony, as the car in which the officers were riding came
to a stop near defendant's car, Shurtleff alighted and, going
to the left of defendant's car and the side on which he was

sitting, opened the car door and asked; "Is this Mr. Van-
derpool?" Without further ado, defendant drew a revolver
and pointed it at Shurtleff's breast, saying: "Who in the
hell are you?" Shurtleff answered: "I am Mr. Shurtleff,
deputy state sheriff." Defendant then stated that no dep-
uty state sheriff could take him alive and that he would
blow his heart out. Shurtleff advised him that if he felt
that way about it he could drive on. At this instant de-
fendant's attention was diverted and he momentarily
turned his face to the right, whereupon the sheriff, taking
advantage of the situation, seized defendant's hand and
gun and forced it back. During the struggle defendant at-
tempted to reach another gun which lay on the seat beside
him. Shurtleff thrust the gun against the side of defend-
ant's head and face, dazing him and producing a wound
from which blood flowed freely. He then pulled defendant
out of the car, got possession of defendant's gun and or-
dered him to surrender.

After being subdued, defendant stated that he was a
bootlegger and boasted of the fact; that he had sold 60 gal-
lons that morning, and further stated: "It is a good thing
the little girl was standing right behind you when you came
up to the car or you would have been a dead man." Both
revolvers were loaded. The one which defendant pointed
at Shurtleff had the safety down and was ready for action.
Other witnesses on behalf of the state tended to corroborate
the evidence above outlined.

Defendant testified in his own behalf. In giving his ver-
sion of the transaction, he stated that he was a bootlegger
and carried the guns to protect himself against highway
robbers and hijackers; that when Shurtleff and Steele
came toward him he thought they might be highwaymen
and drew his gun for self-protection. Steele had a gun
in his hand. Defendant testified: "As they came up, I just
opened the door and stuck my gun out like that (indicating)
and said, 'Back up there and tell who you are.'" At that
time Shurtleff was within three feet of the car. He stated

Vanderpool v. State.

that he was deputy state sheriff. Witness then stepped out of the car and said: "That is a different question. If you are the honorable sheriff, I will surrender like a man, I am not fighting the law, I am dodging them." He also stated that, as he turned to lay his gun on the running-board of of the car to surrender, Shurtleff seized him and in the struggle defendant was struck on the head with an automatic gun. Witness denied that he stated he would have killed Shurtleff but for the presence of the little girl and generally denied the state's testimony.

Under this state of the record, we are of the view that the question of whether there was an unlawful assault to inflict great bodily injury was for the jury to determine. It is an assault for a person to unlawfully point a loaded revolver at another in a menacing or threatening manner. Whether such act is done with intent to inflict great bodily injury must be determined by all of the facts and circumstances of each particular case. The mere fact that defendant did not shoot when he had the opportunity does not necessarily show that he did not intend to do so. The intent of the assault and not the act in fact committed, provided there was an assault, constitutes the gist of an assault with intent to inflict great bodily injury.

In discussing the general question of intent to inflict great bodily injury, the rule is stated in 5 C. J. 740, sec. 218, as follows: "To constitute the offense under consideration there must be an assault which must be unlawful and coupled with a present ability to injure, but no battery need occur. As has been noted, the intent of the accused and not the act committed determines the character of the assault. * * * Therefore it has been held that the assault may be committed with an unloaded firearm, the intent being present, as where the assailant believed his weapon to be loaded." In *Keefe v. State*, 19 Ark. 190, defendant drew his pistol, pointed it toward the heart of the complaining witness, and said: "If you do not pay me my money, I will have your life." Complaining witness told defendant that if he would go back to the house he would

try to borrow the money and pay the debt. They went back to the house, defendant still holding the pistol in his hand, and complaining witness borrowed the money and paid the defendant, who went away and made no other attempt to use his pistol or injure the witness. These facts were held sufficient to sustain a conviction of assault with intent to inflict great bodily injury. In *State v. Mitchell*, 139 Ia. 455, it is held: "A conditional threat of injury with a deadly weapon, together with an act calculated to put the person assailed in fear, and the present ability to inflict the threatened injury, is sufficient to constitute the crime of assault with intent to inflict great bodily injury."

It is next urged that the court erred in giving certain instructions. We deem it unnecessary to prolong this opinion by a discussion of the criticisms addressed against the separate instructions. It is true certain instructions standing alone are faulty, but when construed as a whole the instructions correctly state the law. It is a well-established rule that instructions must be construed together. *Clary v. State*, 61 Neb. 688.

It is also urged that the court erred in permitting evidence to be introduced, over the objections of the defendant, pertaining to the details of a previous conviction of the defendant for felony. Defendant was a witness in his own behalf and as such subjected himself to the same rules as to cross-examination as apply to any other witness. Section 8848, Comp. St. 1922, provides: "A witness may be interrogated as to his previous conviction for a felony. But no other proof of such conviction is competent except the record thereof." Acting under the provision of the statute and over the objections of the defendant, which are omitted, but which are full and ample to preserve defendant's rights, the county attorney made this record: "Q. Mr. Vanderpool, have you ever been convicted of felony or pleaded guilty to a felony? A. Yes, sir. Q. When? A. Well, its, let's see, it has been quite a number of years back. Q. What was the charge? A. For fighting. Q. Is it not a fact that it was cutting with intent to kill?

A. It has been so long ago that I have forgot just how the charge read, but it happened when I was a boy under age. We were at Cortland, Nebraska, at a dance and I was defending myself." On motion of the county attorney, the latter part of the answer was stricken as self-serving. "Q. I want to know what the charge was. A. Well, as I say, I don't remember just how it was written on me, but I was charged with cutting and using a knife at a dance hall up here at Cortland, Nebraska." The state, over objections, then introduced the record of the conviction of defendant which charged him, with two others, of the crime of stabbing with intent to kill in one count and with stabbing with intent to wound in the other count, and that the defendant pleaded guilty to the charge, and being 16 years of age was sentenced to serve a term in the boy's industrial school. Defendant being a witness in his own behalf, it was competent to show that he had been previously convicted of a felony for the purpose of affecting his credibility. It is quite apparent that the line of inquiry after the first question above quoted was not intended for the purpose of laying the foundation for impeaching the witness, but rather for the purpose of showing that defendant was prone to engage in acts of personal violence. Defendant having admitted his previous conviction, the further inquiry upon the subject was improper. It is a well-recognized doctrine in criminal law that, ordinarily, previous conviction cannot be received in evidence as tending to establish guilt of the offense for which the accused is being tried. The right to inquire as to a previous conviction rests on the statute and is for the purpose only of affecting the credibility of the witness. A fair interpretation of the statute seems to permit the question whether the witness has ever been convicted of felony. If the witness answers in the affirmative the inquiry should end there, and thereafter it is improper to inquire into the nature of the crime or the details of the offense. If the witness denies or does not remember that he has been previously convicted of a felony, then he may be impeached on this point only by the production of the

record of his conviction. This view of our statute finds support in *Leo v. State,* 63 Neb. 723, *Ford v. State,* 106 Neb. 439, and in Iowa under a statute in exact terms as our own, *State v. Concord,* 172 Ia. 467.

We think the trial court erred in permitting the county attorney to press his cross-examination upon the question of the previous conviction of defendant beyond the point contemplated by the statute, and that under the facts and circumstances in this record the defendant was prejudiced by the ruling. While no request was made by defendant for an instruction on the question of the previous conviction of defendant, we think the better practice to be that the court should instruct the jury that evidence as to previous conviction of the accused of a felony is to be considered only as affecting his credibility as a witness and not as tending to prove the crime charged. Without such an instruction the jury are apt to regard the previous conviction as a circumstance tending to prove guilt of the offense for which accused is being tried. In *Keating v. State,* 67 Neb. 560, it is held: "By virtue of the statute, a prior conviction of a felony may be proved for the purpose of affecting the credibility of a witness, and the court may properly instruct the jury as to the purpose of such evidence."

It is also urged that the court erred in permitting certain witnesses called by the state, on rebuttal, to contradict certain evidence of witnesses for defendant, which was collateral to the main issue. Some of these instances are of a trivial character and we would not feel justified in reversing the judgment on that ground alone. The rule is well settled, however, that, "When a witness is cross-examined on a matter collateral to the issue, he cannot, as to his answer, be subsequently contradicted by the party putting the question. The test as to whether a fact inquired of in cross-examination is collateral is, would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea? *Ferguson v. State,* 72 Neb. 350; *Johnston v. Spencer,* 51 Neb. 198.

Other questions are discussed in the brief for defendant, but they are not likely to occur upon a retrial of the case and will not be considered. For the reasons above set forth, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.