STATE OF NEBRASKA, APPELLEE, V. NICK KALLOS, APPELLANT.

225 N. W. 2d 553

Filed February 6, 1975. No. 39538.

Mitchell & Beatty, Larry R. Demerath, and Timothy D. Whitty, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This case involves a criminal prosecution of the appellant, Nick Kallos, on two counts of receiving stolen property. The appellant pleaded not guilty to both counts and was brought to trial after argument of various pretrial motions, including a motion to quash the search

warrant issued in this case and a motion to suppress evidence. Both the aforesaid motions were overruled by the court. The case was tried to a jury, which found the appellant guilty on both counts. His motion for a new trial was overruled and he thereafter filed an appeal to this court. For reasons hereinafter discussed, we reverse and remand the cause to the District Court for a new trial.

The appellant in this case is the owner and operator of Nick's Lounge and Restaurant in Grand Island; and, with the assistance of his wife, has operated this establishment for over 20 years. In count I of the information, unnumbered, he was charged with receiving stolen property obtained in a burglary of the Sportsman's Bar on March 25, 1973. In the second unnumbered count of the information he was charged with receiving certain meats, liquor, and cigarettes allegedly taken in a burglary of Schimmer's Steak House on April 17, 1973.

The principal witness against the appellant at the trial of the cause was an individual named Richard Perryman, a transient, who was the admitted perpetrator of both the afore-mentioned burglaries. The burglary of the Sportsman's Bar was committed by him alone. He testified that he had taken a large number of coins from various coin-operated machines in the Sportsman's Bar, and had later taken them to the appellant, who had converted the coins into currency for him, after deducting a certain amount from the face value of the coins given him. Perryman also testified as to the commission of the burglary at Schimmer's Steak House, with the assistance of an accomplice, one Orin Schultz. Perryman testified that later that evening they had taken the meat and other items obtained from Schimmer's Steak House to the residence of the appellant, and that an agreement was reached as to the amount to be paid for those items. He further testified that on the following day he went to appellant's place of business, and appellant at that time gave him a check in payment therefor,

which he endorsed and returned to appellant.  Appellant then paid him cash for the check.  The claimed accomplice, Orin Schultz, who at the time of the trial was serving a sentence for a prior felony, to wit, an alleged burglary of a farmhouse in company with Perryman, was returned to the trial of this case to testify as a witness, and denied any participation whatsoever with Perryman in the burglary of Schimmer's Steak House, about which more will be stated later in this opinion. We wish to add that the record reveals the witness Perryman had committed numerous prior burglaries since his arrival in Grand Island, Nebraska, and admitted to same, but had not served any time whatsoever in the penitentiary because of such burglaries.  The record also reveals that he had a long history of mental problems consisting of paranoia and schizophrenic tendencies, and had been in several mental institutions.  It was Perryman who gave the police information relative to appellant's receiving stolen property from the burglaries in question, although in two prior statements given the police he had not mentioned that fact.

Appellant makes numerous assignments of error which he claims individually and collectively are grounds for reversal of his conviction and sentence, and which he claims deprived him of a fair trial.  We shall discuss only two of these assignments, which we believe are sufficient to dispose of this appeal.

Appellant's first assignment of error is that there was no probable cause for the issuance of the search warrant involved in this case because of an unreasonable and excessive length of time which elapsed between the occurrence of the events in question and the issuance of the search warrant.  Perryman testified that he took the box of loose coins obtained in the burglary of the Sportman's Bar to appellant Kallos and traded them for bills.  He further testified that he rolled the loose coins into wrappers in the basement of Nick's Lounge and Restaurant, disregarding a considerable number of

bent coins, some with fingernail polish on them, and also a nickel with a hole in it. He tossed these coins, according to his testimony, into a corner of the basement. On the basis of this information, the Grand Island police on December 19, 1973, obtained a search warrant for those premises from the District Judge on an affidavit for a search warrant dated the same date, and the premises were searched on that date and return of search warrant made.

After an extensive and intensive search of the basement area by numerous police officers, they were able to locate only five coins, none of which were in the corner and none with fingernail polish on them, although they found one coin with a hole in it. Two of the coins were found in boxes on a shelf, one on the back part of a desk, and another one below the desk. Neither the owner of the Sportsman's Bar, the burglarized premises, nor Perryman, the burglar, were able to positively identify the coins as those obtained in the burglary. We also point out that the evidence discloses the appellant, himself, had coin machines of various kinds on the premises, and had been counting coins in the basement for over 20 years. He had, in fact, accumulated many bent coins during the operation of his business during that period. We add that even the discovery of a coin with a hole in it would not seem to be so unusual in the operation of coin-operated machines as to amount, per se, to a positive identification of the origin of any such coin.

As previously stated, the burglary of the Sportsman's Bar occurred on March 25, 1973, and the issuance of the search warrant, and the search itself, occurred on December 19, 1973. The lapse of time involved was 269 days, or practically 9 months between the occurrence of the event and the issuance of the search warrant. It is true the affidavit for the search warrant contains the conclusional statement that according to informant's information, the coins were discarded in the basement of

said premises in an area unlikely to be occupied or disturbed, but the affidavit does not contain any information as to how the requesting police officer might have known the area was unlikely to be occupied or disturbed. There is no showing that either the informant or the affiant had any personal knowledge the area had remained undisturbed.

It is a general and well-established rule that the proof of probable cause which must be made before a search warrant may be issued must be of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time, and whether the proof meets this test must be determined by the circumstances of each case. Generally, it may be said that no more than a "reasonable" time may have elapsed, and the recital must be of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at the time. See, 68 Am. Jur. 2d, Searches and Seizures, § 70, p. 724; 79 C. J. S., Searches and Seizures, § 73 d, p. 857. Innumerable court decisions in this country have considered and decided the question here presented as to whether the period of time elapsing between the occurrence of the event and the issuance of the search warrant was reasonable. These cases are collected and discussed in an annotation of recent vintage appearing in 100 A. L. R. 2d 526, and supplements thereto.

In the instant case we deem it highly unlikely and improbable that stolen coins, allegedly thrown on the floor in a corner of appellant's office in his business establishment, would remain there undisturbed for a period of almost 9 months. In fact, the record reveals that other persons were frequently in that office. We must therefore conclude that at the time the search warrant was issued the police requesting the warrant did not have probable cause to believe that the coins would still be there. There being no probable cause ex-

isting for the issuance of the search warrant, it was invalid.

Appellant also assigns as error the action of the trial judge in receiving into evidence the coins discovered during the aforesaid search of the premises, claiming that there was no adequate identification of such coins. In view of our ruling on the invalidity of the search warrant, it is unnecessary for us to consider this assignment.

Appellant also contends that the court erred in allowing improper cross-examination of appellant's witness, Orin Schultz. Appellee claims that the collateral area of witness Schultz' felony convictions was opened by the appellant, following direct examination by the State of its witness, Perryman, who testified as to crimes committed by him since coming to Grand Island. During the course of Perryman's testimony he admitted the burglary of a certain farmhouse and in response to the question as to who, if anyone, was with him on that occasion he replied "Orin Schultz." The question was then asked as to where Mr. Schultz was at that time, and his reply was "he's in the penitentiary at Lincoln." Subsequently in the trial, appellant's counsel, John Mitchell, on direct examination inquired of Schultz with reference to the burglary of that particular farmhouse, and Schultz admitted that he had been involved with Perryman on that occasion. It is apparent that every question asked by Mitchell had previously been asked of Perryman by the prosecutor and that Schultz merely reiterated facts already in the record. The only area of Schultz' testimony which was conceivably open for cross-examination was that relating to the relationship of Schultz and Perryman and the burglary of the farmhouse.

On subsequent cross-examination of Schultz, however, the State went into great detail as to other offenses committed by Schultz. A proper understanding of appellant's assignment of error in this regard requires that

we set forth the specific questions and answers as revealed by the record: "Q. All right, Mr. Schultz, have you ever been convicted of a felony other than the one you have testified to? MR. MITCHELL: To which we would object, Your Honor, being incompetent, irrelevant and immaterial, and not proper cross-examination. THE COURT: That's overruled; it goes to his credibility. A. Yes. Q. All right now, have you been convicted of more than one felony? A. Yes. MR. MITCHELL: To which we again renew our objection, being incompetent, irrelevant and immaterial. THE COURT: Overruled. Q. Your answer was? A. Yes. Q. I'm going to direct your attention back to the month of September of 1949. MR. MITCHELL: To which we object, Your Honor, and move for mistrial at this time. THE COURT: It's overruled. MR. GRIMMINGER: I want the record to show, Your Honor, he opened up the man's record. THE COURT: The objection is overruled. You may proceed. Q. I'm going to direct your attention back to September 1949 and ask you, were you convicted of felonious assault? MR. MITCHELL: To which defendant objects and renews its motion for mistrial and asks that the motion for mistrial be continuing so I do not have to continue making the motion. THE COURT: The objection is overruled. You may continue. A. Yes. Q. I'm going to direct your attention to the year 1952 and ask you if you were convicted of escaping from prison? A. 1952? Q. Yes. A. You have some wrong dates somewhere. Q. Is that on or about the time it would have occurred? A. No. Q. When did it happen? A. 1950. Q. 1950. What about in 1960, were you again convicted of attempted, this time attempted escape from prison? A. You better get your dates or something straightened out. You're mixed up. Q. You help us. A. I never escaped from prison in no 1960. Q. What about 1962? A. No. Q. No, directing your attention—MR. MITCHELL: May I approach

the bench, Your Honor? THE COURT: Yes. MR. MITCHELL: At this time, Your Honor, we move that the questioning, that is, just been made by Mr. Grimminger be striken and that the jury be properly instructed; that it does not constitute any evidence and further move for mistrial on these. THE COURT: The motion is overruled. Q. All right, Mr. Schultz, directing your attention to the year 1967, I will ask you if you had occasion to be convicted of robbery that particular year? A. I believe that's right. Q. Pardon? A. I believe you are correct; it was 1967, yes. MR. Grimminger. I believe that's all."

The applicable statute involved is section 25-1214, R. R. S. 1943, which provides as follows: "A witness may be interrogated as to his previous conviction for a felony, but no other proof of such conviction is competent except the record thereof." We have previously held that the above statute proscribes and limits the scope of any inquiry initiated by the State that may be made on cross-examination of a defendant, or any witness, in a criminal case. It permits inquiry of the defendant, or any witness, when he is a witness, if he was previously convicted of a felony. If the answer is in the affirmative, he may be asked the number of such convictions, and if the answer is correctly given, the inquiry must end there. The purpose of the restricted inquiry permitted by the statute is for whatever effect the facts of a previous conviction may have on the credibility of the defendant, or witness, as a witness and not for the purpose of tending to show he is prone to engage in criminal actions. See, for example, Latham v. State, 152 Neb. 113, 40 N. W. 2d 522 (1949); Bosteder v. Duling, 115 Neb. 557, 213 N. W. 809 (1927). Also in Latham v. State, *supra,* we stated: "The inquiry made by authority of this statute (§ 25-1214, R. R. S. 1943) should be confined to a question or questions in proper form, and the witness should be required to answer specifically

and directly. Neither the cross-examiner nor the witness should be allowed to wander or explain, but should be confined to the narrow limits fixed by the statute. Vanderpool v. State, 115 Neb. 94, 211 N. W. 605; Bosteder v. Duling, *supra;* Sulley v. State, 119 Neb. 783, 230 N. W. 846." The cases above cited also hold that where a witness on cross-examination admits previous conviction of a felony, it is error to allow further inquiry on the subject or permit the record of the conviction to be introduced. See, also, Vanderpool v. State, 115 Neb. 94, 211 N. W. 605 (1926).

It appears from the cross-examination of witness Schultz, as above set out, that he admitted having been convicted of more than one felony. Under the foregoing statute and decisions it would have been entirely proper for the State to have inquired as to the number of his prior convictions, but the inquiry would have had to stop at that point. Had the witness denied prior convictions or testified as to the incorrect number, it would have been incumbent upon the State at that point to bring in records to impeach him. In this case, however, the trial court permitted extensive cross-examination about his prior felony convictions, including the identity and dates thereof. This line of inquiry, was, we believe, in excess of that permitted under the foregoing statute and the case law of this state, and undoubtedly was highly prejudicial to the appellant, as Orin Schultz was his principal and most important witness. Schultz specifically and catagorically denied any involvement with Perryman in the burglary of Schimmer's Steak House, and in other respects refuted the testimony of the witness for the State. His credibility was, therefore, of the utmost importance to the appellant, and we conclude that it was error for the court to permit the cross-examination of Schultz to the extent discussed above.

We have concluded therefore, that the defendant in this case did not receive a fair trial, and the judgment

should be reversed and the cause remanded to the District Court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

CLINTON, J., concurs in the result.