STATE OF NEBRASKA, APPELLEE, V. KEVIN R. GROVES, APPELLANT.
477 N.W.2d 789

Filed December 13, 1991.   No. 90-283.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Kimberly A. Klein for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, Kevin R. Groves, was convicted by a jury of unlawful possession with intent to deliver methamphetamine and possession of a firearm by a felon. He was sentenced to a term of imprisonment of 2 to 4 years on the drug charge and to 13 months on the firearm charge. He has appealed and makes four assignments of error.

In his first assignment of error, the defendant contends that the trial court erred in overruling his motion to suppress evidence discovered during the search conducted on April 29, 1989, at 8104 Bedford Plaza, a claim he preserved by making proper objections at the time of trial. See *State v. Britt*, 237 Neb. 163, 465 N.W.2d 466 (1991).

On April 20, 1989, Deputy Sheriff William Jackson applied for a warrant to search for methamphetamine; various items

associated with the use, manufacture, and sale of drugs; and a 12-gauge pump-action shotgun, cut off at both the barrel and the stock to make it shorter than the legal dimensions. The items to be seized were alleged to be under the control or custody of Groves and concealed or kept at "8032 Bedford Plaza, Omaha, Douglas County, Nebraska, a single story, wood frame, single family dwelling, white in color, and any out buildings on the curtilage, and any vehicles on this property . . . ."

Deputy Jackson's affidavit set forth the grounds in support of issuance of the search warrant, alleging that he had been provided information by a confidential informant regarding Groves and the address to be searched. Deputy Jackson checked this information and found it to be true.

The informant had advised Deputy Jackson that he had been inside the residence described as 8032 Bedford Plaza and had observed Groves in possession of more than 2 grams of methamphetamine and a sawed-off 12-gauge shotgun. The informant further advised that Groves was a convicted felon and currently wanted for an active felony arrest warrant. The informant was able to pick out Groves from numerous booking photographs the informant was shown.

Deputy Jackson checked and found that Groves was a convicted felon with prior arrests for drug-related offenses, weapons-related offenses, and assault. Furthermore, Deputy Jackson found that Groves was currently wanted on 10 active warrants, 1 of which was for a felony.

On the basis of Deputy Jackson's affidavit, a judge of the county court issued the requested search warrant. The search warrant authorized a search of "8032 Bedford Plaza, Omaha, Douglas County, Nebraska, a single story, wood frame single family dwelling, white in color, and any out buildings on the curtilage, and any vehicles on this property . . . ."

On April 29, 1989, Deputy Jackson and several other officers executed the search warrant. The defendant was found asleep on a couch in the basement, and during the search of the basement, the officers discovered various items of contraband and a number of loaded weapons in the area immediately surrounding the defendant. The defendant was arrested, and

the warrant was returned along with an inventory to the county court on April 29.

The defendant filed a motion to suppress the items seized, alleging, among other things, that the affidavit in support of the search warrant did not state sufficient facts to show probable cause for issuance of the warrant and that the warrant violated the particularity clause of the fourth amendment to the U.S. Constitution because it contained an incorrect address.

The correct street address of the house where the defendant was found and from which the items were seized is 8104 Bedford Plaza. This was not discovered until after the warrant was executed.

At the suppression hearing, Deputy Jackson testified that the confidential informant had shown him the house that was later searched. Deputy Jackson had conducted surveillance of this house for approximately a week prior to obtaining the warrant to search, and he had observed the defendant outside the residence on several occasions.

The residence which was searched is located west of 80th Street on Bedford Plaza, which is a dead-end street with houses located only on the north side of the street. It is a white single-story, wood frame, single-family residence and is the last house on the street.

Deputy Jackson was unable to ascertain the numerical address from his surveillance of the house.

To get the house's street address which was used in the affidavit, Deputy Jackson used a computer-listed property file. The last house on the street was listed as number 8032.

The house that had been under surveillance and that Deputy Jackson searched was not 8032 Bedford Plaza. The residence at 8032 Bedford Plaza is located directly east of 8104 Bedford Plaza, the residence that was searched, and is a small, one-story, wood frame, green-colored house. The record does not show whether there is a street address posted on the house located at 8032 Bedford Plaza.

Deputy Jackson testified that there was no confusion as to the house where he was going to serve the search warrant. The white one-story house that had been under surveillance was the only house where the officers went to serve the warrant.

The defendant contends that the district court erred in overruling his motion to suppress because Deputy Jackson's affidavit requesting the search warrant was insufficient to establish probable cause for issuing the search warrant and because the search warrant contained an inaccurate description of the place to be searched.

The defendant alleges that the affidavit was insufficient because the reliability of the informant was not established by the affidavit.

In determining the correctness of a trial court's ruling on a motion to suppress, this court will uphold a trial court's findings of fact unless those findings are clearly erroneous. *State v. Sneed and Smith*, 231 Neb. 424, 436 N.W.2d 211 (1989). In deciding whether the trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *Id.*

This court has adopted the "totality of the circumstances" test set forth by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), to determine the sufficiency of an affidavit used to obtain a search warrant. *Sneed and Smith, supra.* It is only the probability, and not a prima facie showing, of criminal activity which is the standard of probable cause for issuance of a search warrant. *Id.*

In evaluating probable cause for the issuance of a search warrant, the magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* The duty of the reviewing court is to ensure that the issuing magistrate had a substantial basis for determining that probable cause existed. *Id.*

In this case, the affidavit, under the totality of the circumstances, was sufficient to establish that the magistrate had probable cause for issuance of the search warrant because the informant had seen illegal narcotics at the residence where

the defendant was located. The reliability of the confidential informant's statements was established independently by Deputy Jackson. Deputy Jackson observed the defendant entering and leaving the residence that the informant had shown him. Deputy Jackson verified the informant's statement that the defendant was a convicted felon and wanted on a felony arrest warrant. Also, Deputy Jackson had the informant identify a photo of the defendant from a number of booking photographs.

The defendant also argues that the trial court erred in overruling his motion to suppress because the search warrant contained an inaccurate description of the premises to be searched, in violation of the fourth amendment's requirement of a particular description of the place to be searched and the persons to be seized.

It is not disputed by either party that the street address contained in the affidavit and search warrant is not the correct street address of the house that was actually searched. The address listed in the affidavit and search warrant is 8032 Bedford Plaza, and the correct address of the residence that was searched is 8104 Bedford Plaza. However, an error in the street address of the place to be searched is not per se fatal to the validity of a warrant. See *People v. Fragoso*, 68 Ill. App. 3d 428, 386 N.E.2d 409 (1979).

The test to determine the sufficiency of a search warrant's description is whether the place to be searched is described with sufficient particularity so as to enable the executing officer to find and identify the location with reasonable effort, and whether there is any reasonable probability that another site might mistakenly be searched. *United States v. Clement*, 747 F.2d 460 (8th Cir. 1984); *United States v. Gitcho*, 601 F.2d 369 (8th Cir. 1979). See, also, *State v. Walters*, 230 Neb. 539, 432 N.W.2d 528 (1988). Factors to be considered in determining the validity of a warrant inaccurately describing the place to be searched are: (1) that the address provided by the warrant, although incorrect, still describes the same piece of property; (2) that property intended to be searched is adjacent to that described in the search warrant and both are under the control of the defendant; (3) that the incorrect address describes a place

not in existence; (4) that other parts of the description which are correct limit the property to be searched to one place; and (5) that the place which was intended to be searched had previously been under surveillance or was being surveilled while the warrant was obtained. *United States v. Gitcho, supra.* See, also, *United States v. Clement, supra*; *State v. Walters, supra.*

In *Gitcho*, officers obtained a warrant for 4144 Geraldine, Apt. 7, Park Chalet Apartments, St. Louis County, Missouri. The address was incorrect. The address of the property that was searched was 4146 Park Chalet, Apt. 7, St. Louis County, Missouri, which property had been under surveillance by the executing officers prior to the search.

The U.S. Court of Appeals for the Eighth Circuit reversed the trial court's order suppressing any and all evidence gathered as a result of the search, finding that while the address in the warrant for the place that was searched was incorrect, it was reasonable for the location intended. The appellate court, in upholding the search, placed special importance on the facts that the officers executing the warrant personally knew which premises were intended to be searched because of their previous surveillance and that the premises which were intended to be searched were, in fact, those that were actually searched.

In *State v. Petta*, 354 So. 2d 563 (La. 1978), the Louisiana Supreme Court upheld a search where there was a discrepancy between the street number of the residence searched and that described by the search warrant. In that case, the evidence was discovered as the result of a warrant obtained to search property located at 1433 Crete Street, Apt. C. The residence was further described as a two-story pink stucco house trimmed in white.

The building was not marked with a street number. It was separated only by an alley from an adjacent residence numbered 1431. There was no 1433 Crete Street, and the correct street address of the pink stucco residence that was searched was 1435.

The Louisiana Supreme Court held that a description in a search warrant of property to be searched is sufficient when it reasonably enables the searching officers to ascertain and identify the place which alone was intended to be searched. The

court upheld the search because the place to be searched was described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that they would not search the wrong premises.

The U.S. Court of Appeals for the 11th Circuit reversed a trial court's suppression of evidence and held that a search warrant described the premises to be searched with sufficient particularity because it directed the officers to the correct apartment number, because it confined their examination to that apartment, and because it placed the occupants of the apartment on sufficient notice of the officers' authority to search the premises. *United States v. Burke*, 784 F.2d 1090 (11th Cir. 1986). In that case, the warrant had the wrong building number, and the named street did not exist. The only correct information in the warrant was the number of the apartment to be searched. The court upheld the search because the warrant contained a detailed physical description of the building, minimizing the possibility that an apartment in any building other than the one described would be searched, and because the officer who pointed out the correct apartment to the officer executing the warrant knew precisely which premises were to be searched because he had previously been to that building with the confidential informant who provided the information supporting the request for the search warrant.

In *State v. Trasvina*, 16 Wash. App. 519, 557 P.2d 368 (1976), the Washington Court of Appeals upheld a search pursuant to a warrant that described the premises to be searched as " 'a two-story, white frame house with green trim, located geographically directly behind and East of 6604 Northeast 94th Avenue, Vancouver,' " although the correct description of the place that was searched " 'was a "two-story, white frame house with green trim located geographically directly behind and east of 6513 N.E. 94th Avenue . . . ." ' " *Trasvina, supra* at 521, 557 P.2d at 369. The defendants argued that the search was unlawful because the warrant did not particularly describe the premises because there could have been more than one house in the area that fit the description. In response to the defendants' argument, the court stated:

No evidence appears in the record that there were any

other 2-story, white frame houses with green trim located near the 6600 block of 94th Avenue N.E. in Vancouver. Nor is there any evidence that the premises searched failed to conform to the description except for the address. The burden of proof as to a motion to suppress evidence is upon the movant. . . . In this case, Trasvina and Martin had the burden of showing the premises were not reasonably identified. That is, they had to show whether the house searched reasonably could have been confused with another house in the area described by the original warrant. They did not do so, and mere speculation will not suffice. Therefore, we hold that the premises were described with sufficient particularity in the original warrant.

*Trasvina, supra* at 523, 557 P.2d at 370-71.

In the present case, the defendant argues that the search was unlawful because the executing officers would have searched the wrong house if they had gone to 8032 Bedford Plaza. This argument lacks merit because the defendant failed to prove that 8104 Bedford Plaza could reasonably have been confused with 8032 Bedford Plaza or any other house in the area described by the warrant. Furthermore, there are additional circumstances to support the trial court's decision to uphold the search.

The record shows that the house at 8104 Bedford Plaza had been under surveillance by the officer executing the search warrant for a week prior to the obtaining of the search warrant. Deputy Jackson was not confused as to which house to search. The house that was searched matched the description in the warrant and was the residence that was intended to be searched. It is a single-story, wood frame, single-family dwelling, white in color. The house at 8032 Bedford Plaza is a green single-story, wood frame, single-family residence, and there is nothing in the record to show whether there are any other white single-story, wood frame, single-family homes on Bedford Plaza in the area west of 80th Street.

The description in the search warrant was reasonable for the location intended. The warrant describes the place to be searched with sufficient detail to enable the executing officer (in this case, Deputy Jackson) to locate it with reasonable certainty,

and there is no reasonable probability that the executing officer would mistakenly search another residence. Accordingly, the trial court did not err in overruling the defendant's motion to suppress the items seized pursuant to the search warrant.

There are additional reasons why the motion to suppress was properly overruled. In the present case, at the time Deputy Jackson requested the warrant, the information available to him indicated that the address of the premises he sought to search was 8032 Bedford Plaza. Under the circumstances, this was a reasonable address for that location, and Deputy Jackson had no reason to suspect that the warrant or the supporting affidavit was invalid because of an incorrect address. It was not until after the warrant was executed that it was discovered the address it listed was incorrect.

In *Maryland v. Garrison*, 480 U.S. 79, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987), the U.S. Supreme Court held that evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.

In *Garrison*, Baltimore police officers obtained and executed a warrant to search the person and third-floor apartment of Lawrence McWebb for controlled substances and paraphernalia. The officers correctly stated the address and location of McWebb's apartment and reasonably believed that there was only one apartment on the described premises. However, the third floor was divided into two apartments, one occupied by McWebb and one by the defendant, Garrison. Before the officers discovered that the third floor contained two apartments, they saw and seized contraband in Garrison's apartment. The court held that the validity of the search depended on whether the executing officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable. The court found the officers' failure to realize the warrant's overbreadth was reasonable because the objective facts available to the officers at the time the warrant was sought suggested no distinction between the apartment requested to be searched and the third-floor premises.

The Court stated that if the officers had known, or if they should have known, that there were two separate apartments on the third floor of the address listed in the warrant, they

would have been obligated to exclude Garrison's apartment from the scope of the requested warrant. The constitutionality of the police officers' conduct was judged in light of the information available to them at the time they acted.

The Court stated:

> But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate. On the basis of that information, we agree with the conclusion of all three Maryland courts that the warrant, insofar as it authorized a search that turned out to be ambiguous in scope, was valid when it issued.

*Garrison, supra* at 480 U.S. at 85-86.

In *State v. Kleinberg*, 228 Neb. 128, 421 N.W.2d 450 (1988), we held that evidence seized pursuant to a defective search warrant is not subject to being suppressed where the warrant was executed by officers who acted in good faith and reasonably believed that they were executing a valid warrant.

In circumstances similar to those in the present case, the U.S. Court of Appeals for the Fifth Circuit held that evidence obtained during a search pursuant to a warrant which contained an incorrect street name was admissible under the good faith exception to the exclusionary rule. *U.S. v. Gordon*, 901 F.2d 48 (5th Cir. 1990). The court found that the incorrect street name in the search warrant was not a facial defect, which would prevent admission of evidence discovered during the search under the good faith exception to the exclusionary rule, because looking at the warrant or at both the warrant and the supporting affidavit, one would not suspect that the warrant was invalid.

The defendant also argues that because the warrant was not executed until 9 days after it was issued, the search was unconstitutional because the information contained therein was stale.

Proof of probable cause justifying the issuance of a search warrant generally must consist of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time. However, whether the proof satisfies this test is determined by the circumstances of each case. *State v. Eary*, 235 Neb. 254, 454 N.W.2d 685 (1990). In general, no more than a reasonable time may have elapsed between the occurrence of facts and the issuance of a search warrant based thereon. *State v. Kallos*, 193 Neb. 113, 225 N.W.2d 553 (1975).

In this case, the application for the warrant was based in part upon information received from the confidential informant, who had been inside the residence in question within the previous 72 hours. Under all of the circumstances in this case, we believe the facts justifying the issuance of the warrant were sufficiently closely related to the time of the issuance of the warrant to justify the finding of probable cause.

The warrant was issued on April 20, 1989. It was executed and returned on April 29, 1989.

Neb. Rev. Stat. § 29-815 (Reissue 1989) requires a warrant to be executed and returned within 10 days after its date of issuance. Since the warrant was executed within the statutory limits, the defendant's argument is without merit.

Among the items that were seized pursuant to the search and admitted into evidence at the defendant's trial were a "belt knife"; a 12-gauge shotgun and the shells that it was loaded with; a leather holster, a "High Standard" pistol that was contained within it, and the ammunition that was loaded into the weapon; a leather holster that had been fastened underneath a coffee table, a semiautomatic Beretta .22-caliber pistol that was contained within the holster, and the rounds of ammunition the pistol contained; an ankle holster used to hold the Beretta pistol; an assault pistol and the violin case in which it was contained; a toolbox containing numerous plastic bags, a homemade scoop, a triple-beam scale, a sifter, and a cutting

agent; a bag containing methamphetamine; syringes; and a spoon with traces of methamphetamine.

Deputy Jackson testified about the arrest of the defendant and the search of the basement area where the defendant was discovered. On direct examination, Deputy Jackson volunteered that the 12-gauge shotgun found near the defendant's head turned out to be stolen.

Counsel for the defendant objected to this testimony and moved for a mistrial out of the presence of the jury. The trial court overruled the defendant's motion, and upon bringing the jury back into the courtroom, the trial court instructed the jury that they should disregard the evidence that the shotgun was stolen.

For his second assignment of error, the defendant contends that the trial court erred by failing to grant a mistrial because Deputy Jackson's statement that the shotgun had been stolen was unfairly prejudicial to the defendant. The defendant argues that his credibility, which was a critical issue in this case, was damaged by the injection of Deputy Jackson's statement and that the damaging effect of the statement was not cured by the trial court's instruction to the jury.

The decision as to whether to grant a motion for mistrial is a matter within the discretion of the trial court, and such a ruling will be upheld absent an abuse of that discretion. *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987); *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986). This court stated in *Borchardt* at 56, 395 N.W.2d at 557-58:

> A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. Egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of other incompetent matters are examples of occurrences which may constitute such events. . . . Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such

material.
(Citations omitted.)

In *Jacobs*, this court upheld the trial court's refusal to grant a mistrial when the sheriff who testified "demonstrated a remarkable inability, or unwillingness, to focus upon and limit his responses to the questions asked of him." *Jacobs, supra* at 193, 410 N.W.2d at 475. We found the questions asked were not improper and there was no showing that the prosecutor was responsible for the sheriff's wanderings. When the defendants objected, the trial court instructed the jury to disregard the sheriff's responses, and in that case, the responses were cut off before any prejudicial statements were made.

The defendant in this case argues that unlike the situation in the *Jacobs* case, Deputy Jackson was not cut off before he made his prejudicial statement which was damaging to the defendant's credibility. The defendant contends that this prejudiced his case and prevented him from receiving a fair trial.

The defendant must prove that the alleged error actually prejudiced him, rather than creating only the possibility of prejudice. *State v. Gore*, 212 Neb. 287, 322 N.W.2d 438 (1982). While the credibility of the defendant was an important issue, there was an abundance of evidence that the jury had to disregard before it could find the defendant was not guilty.

The prosecutor's question to Deputy Jackson was not improper. There was no showing that the prosecutor was responsible for Deputy Jackson's response. The trial court instructed the jury to disregard Deputy Jackson's statement that the gun had been stolen, and the defendant has failed to show how that statement actually prejudiced the outcome of his trial. Under these circumstances, it was not an abuse of discretion for the trial court to refuse to declare a mistrial.

Prior to the trial, the defendant filed a motion in limine asking the court to exclude the 12-gauge shotgun, the knife, and the three 12-gauge shotgun shells which were loaded in the shotgun. The motion in limine further requested the court to order the State to elect which of the three weapons with barrels under 18 inches in length would be offered as evidence of the defendant's felon in possession of a firearm charge and

requested that evidence of the other two firearms be excluded. The trial court denied the defendant's motion.

For his third assignment of error, the defendant alleges that the trial court erred by denying the defendant's motion in limine regarding the introduction of the various weapons found at the time of the defendant's arrest and in failing to order the prosecution to elect which of the three firearms would be offered as evidence of the defendant's felon in possession of a firearm charge. The defendant argues that the evidence of the three guns with barrels less than 18 inches in length was irrelevant in that they have no connection to either count with which the defendant was charged and that even if the guns were relevant, they should have been excluded because their probative value was substantially outweighed by the danger of unfair prejudice.

Neb. Rev. Stat. § 27-404(2) (Reissue 1989) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. It is well established that § 27-404(2) is an inclusionary rule permitting the use of relevant other crimes or acts for all purposes except to prove that the defendant acted in conformity with his character. *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986). The trial court did not abuse its discretion in admitting all of the firearms found in the immediate vicinity of the defendant, as there was a legitimate purpose for admission of all the firearms under each of the counts of the information.

The defendant was charged with possession with intent to distribute methamphetamine and with being a felon in possession of a firearm of less than 18 inches in barrel length. The evidence of weapons with barrels less than 18 inches in length was relevant to both charges, and the evidence was not unfairly prejudicial to the defendant's case.

In drug-related prosecutions, evidence relating to guns in a defendant's possession is relevant. *United States v. Milham*, 590 F.2d 717 (8th Cir. 1979). See, also, *United States v. LaGuardia*, 774 F.2d 317 (8th Cir. 1985). " 'Experience on the

trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.' " *Milham, supra* at 721 (quoting *United States v. Wiener*, 534 F.2d 15 (2d Cir. 1976), *cert. denied* 429 U.S. 820, 97 S. Ct. 66, 50 L. Ed. 2d 80).

The defendant also argues that the State should have been required to elect which of three weapons with barrels less than 18 inches in length it would use in proving the felon in possession charge. The defendant claims that he was prejudiced in preparing for trial because he did not know which of the firearms would be used as evidence against him.

The defendant's argument is without merit. The defendant knew which firearms were found, where they were found, and the circumstances of the finding. The guns were relevant to each charge. The fact that the State had alternate ways of proving each charge did not prejudice the defendant in preparing his defense in this case.

The defendant's fourth and final assignment of error pertains to the trial court's denial of his motion in limine regarding the admission of evidence that he had a prior conviction for burglary, which claim he preserved by making proper objections at trial. See *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990). The defendant argues that his prior conviction for burglary should have been excluded because the record in that case failed to affirmatively reflect that he was represented by counsel, that he waived counsel, or that he was advised of each and all of the constitutional rights set forth in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

This court has held that to prove a prior conviction for enhancement purposes and for habitual criminal proceedings, the State need only establish that at the time of the prior conviction, the defendant had or waived counsel. *State v. Johns*, 233 Neb. 477, 445 N.W.2d 914 (1989). This rule is equally applicable to use of a prior conviction as proof that the defendant is a convicted felon.

The record in this case shows that the defendant had his

attorney present with him at each court appearance up to and including sentencing on the burglary charge. Accordingly, the prior conviction was properly admitted by the trial court.

The judgment is affirmed.

AFFIRMED.

SHANAHAN, J., concurring.

Although I concur that Groves' convictions must be affirmed, the majority has failed to address Groves' contention that probable cause was lacking for the search warrant, when executed, because the information on which the warrant was based had become "stale" and thereby rendered the search unreasonable. That contention deserves the court's attention.

Probable cause to search must exist for issuance of a search warrant and at the time the search warrant is executed. See *United States v. Lemmons*, 527 F.2d 662 (6th Cir. 1975). As the court pointed out in *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975):

> The element of time can admittedly affect the validity of a search warrant. Since it is upon allegation of presently existing facts that a warrant is issued, it is essential that it be executed promptly, "in order to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated." If the police were allowed to execute the warrant at leisure, the safeguard of judicial control over the search which the fourth amendment is intended to accomplish would be eviscerated. Thus, a search pursuant to a "stale" warrant is invalid.

In *Bedford*, the court further observed:

> Timeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was per se reasonable or unreasonable. Rather it should be functionally measured in terms of whether probable cause still existed at the time the warrant was executed.

*Id.*

Although neither the fourth amendment to the U.S. Constitution nor article I, § 7, of the Nebraska Constitution prescribes a specific period for execution of a search warrant,

both Constitutions prohibit "unreasonable searches and seizures." Therefore, reasonableness, based on probable cause and required for a search, does place some constitutional limitation on the time for execution of a search warrant. A delay in executing a search warrant is constitutionally permissible only when the probable cause recited in the affidavit continues until the time of execution. *United States v. Nepstead*, 424 F.2d 269 (9th Cir. 1970). See, also, *United States v. Lemmons, supra*; *State v. Edwards*, 98 Wis. 2d 367, 297 N.W.2d 12 (1980); *State v. Yaritz*, 287 N.W.2d 13 (Minn. 1979).

Accordingly, a constitutionally impermissible delay in executing a search warrant may occur notwithstanding execution of the warrant within the time prescribed by Neb. Rev. Stat. § 29-815 (Reissue 1989): "The warrant must be executed and returned within ten days after its date [issuance]." The majority mistakenly applies § 29-815 as a per se rule and states that "[s]ince the warrant was executed within the statutory limits," Groves' contention that probable cause for the warrant had disappeared "is without merit."

Section 29-815 sets forth a ministerial procedure for return of an executed search warrant. See, *Commonwealth v. Cromer*, 365 Mass. 519, 313 N.E.2d 557 (1974); *United States v. Kennedy*, 457 F.2d 63 (10th Cir. 1972); *People v. Schmidt*, 172 Colo. 285, 473 P.2d 698 (1970); *State v. Hunt*, 454 S.W.2d 555 (Mo. 1970); *United States v. Haskins*, 345 F.2d 111 (6th Cir. 1965). However, § 29-815 also specifies the time within which an officer must execute a search warrant, namely, within 10 days after issuance of the search warrant. The 10-day limit for execution of a search warrant is not mandated by the U.S. Constitution or Nebraska Constitution, but is a legislatively expressed time limit for execution of a search warrant and does not, and constitutionally cannot, substitute a statutory per se rule of reasonableness in place of judicial review to determine whether a search is supported by probable cause when that warrant is executed. As construed and applied by the majority today, the determination of whether a search warrant has been executed within the duration of probable cause as the basis for a reasonable search and seizure is relinquished to the Legislature for expression in a statutory prescription, the per se rule of

reasonableness of time recognized by the majority in Groves' case, notwithstanding the constitutionally conferred power and corresponding obligation that only the judiciary may determine whether a search or seizure is reasonable and, therefore, permissible in light of the constitutional safeguards against an unreasonable search and seizure. In *People v. Hernandez*, 43 Cal. App. 3d 581, 588, 118 Cal. Rptr. 53, 58 (1974), the court rejected existence of a statutory per se rule of reasonableness found in a California statute which provided that " '[a] search warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made.' " In *Hernandez*, the court concluded that a statute "which forecloses any inquiry into the continued existence of probable cause, [which inquiry] would prevent executions of search warrants in situations in which such an inquiry would reveal that the probable cause which existed at the time of the issuance had, in fact, completely disappeared at the time of the execution," would preclude judicial inquiry whether execution of the search warrant was reasonable and would, consequently, be unconstitutional. *People v. Hernandez, supra* at 589, 118 Cal. Rptr. at 58. See, also, *State v. Edwards, supra* (probable cause can disappear within the 5-day statutory period allowed for execution of a search warrant); *Donaldson v. State*, 46 Md. App. 521, 420 A.2d 281 (1980) (rejecting contention that a search warrant executed within the statutory 15-day period is, per se, timely in conformity with the constitutional safeguard against an unreasonable search and seizure).

Therefore, the proper inquiry for a reviewing court is whether probable cause dissipated into extinction during the interval between issuance of a warrant and its execution. See, *United States v. Lemmons*, 527 F.2d 662 (6th Cir. 1975); *U.S. v. Whitworth*, 856 F.2d 1268 (9th Cir. 1988). Pursuant to the preceding standard, the inquiry into probable cause for execution of a search warrant is the same as the inquiry for issuance of a search warrant, namely, whether there is probable cause to search.

We have stated:

It is a general and well-established rule that the proof of

probable cause which must be made before a search warrant may be issued must be of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time, and whether the proof meets this test must be determined by the circumstances of each case. Generally, it may be said that no more than a "reasonable" time may have elapsed, and the recital must be of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at the time.

*State v. Kallos*, 193 Neb. 113, 117, 225 N.W.2d 553, 556 (1975). See, also, *State v. Eary*, 235 Neb. 254, 454 N.W.2d 685 (1990) (probable cause involves the fair probability that contraband or evidence of a crime will be found in a particular place).

The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.

*Andresen v. State*, 24 Md. App. 128, 172, 331 A.2d 78, 106 (1975).

Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.

*United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972). See, also, *State v. Eary, supra.*

In Groves' case, the search warrant was obtained on April 20, 1989, and executed 9 days later, on April 29, in the search for 2 grams of methamphetamine and a sawed-off 12-gauge shotgun. Therefore, the proper review is an inquiry to determine whether the probable cause at issuance of the warrant had disappeared by the time the search warrant was executed. After issuance of the search warrant, police, hoping to tie Groves to narcotics traffic, undertook surveillance of the residence where Groves was staying, but the record does not reflect what, if any, information the police gained during their surveillance.

We have stated:

> In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the "trier of fact" and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress. *State v. Blakely, supra.*

*State v. Abdouch*, 230 Neb. 929, 930, 434 N.W.2d 317, 319 (1989). Accord *State v. Juhl*, 234 Neb. 33, 449 N.W.2d 202 (1989).

Some courts have determined that probable cause dissipates rather rapidly when small, or unspecified, amounts of narcotics or controlled substances are involved. See, *State v. Boneventure*, 374 So. 2d 1238 (La. 1979) (when the search warrant affidavit stated that 2 days before issuance of the warrant, "a quantity" of marijuana was offered for consumption in defendants' residence, there was no basis for a reasonable belief that the marijuana was still in the defendants' residence at the time the warrant was issued, because the amount described in the affidavit was a "consumable" amount; hence, no probable cause); *People v David*, 119 Mich. App. 289, 326 N.W.2d 485 (1982) (when only a single marijuana sale

was involved and described in the search warrant affidavit without further allegation of other criminal activity involving a controlled substance, 3 days between the observation described in the search warrant and issuance of the warrant prevented probable cause for the search warrant). Other courts have been more lenient regarding the interval between an observation recounted in a search warrant affidavit as probable cause and issuance of the warrant; for example, notwithstanding the interval, probable. cause existed for a search warrant in the following decisions: *People v. Mesa*, 14 Cal. 3d 466, 535 P.2d 337, 121 Cal. Rptr. 473 (1975) (an informant's observations, which occurred 6 days before issuance of the search warrant, were contained in the search warrant affidavit); *Grant v. State*, 130 Ga. App. 237, 202 S.E.2d 675 (1973) (according to the search warrant affidavit, an informant saw marijuana on the premises 5 days before issuance of the search warrant); *State v. Welsh*, 371 So. 2d 1314 (La. 1979) (an informant observed red and white capsules, LSD tablets, and an undetermined amount of marijuana 4 days before issuance of the search warrant); *State v. Iverson*, 364 N.W.2d 518 (S.D. 1985) (the informant saw a controlled substance in defendant's apartment 3 days before issuance of the warrant); *State v. Bruno*, 427 So. 2d 1174 (La. 1983) (informant's observations 4 days before issuance of the warrant, which was executed 7 days later, pertained to ongoing activity in controlled substances); and *State v. Yaritz*, 287 N.W.2d 13 (Minn. 1979) (6-day interval was permissible when the search warrant affidavit indicated continual sales of controlled substances).

Courts have had little difficulty with probable cause regarding an observation or information concerning a weapon or other articles and instruments used for commission of a crime. *United States v. Steeves*, 525 F.2d 33 (8th Cir. 1975), involved a search warrant for clothing, a ski mask, a handgun and a moneybag, all of which were sought as evidence pertaining to a bank robbery which had occurred 3 months earlier. The court stated in *Steeves*:

> Obviously, a highly incriminating or consumable item of personal property is less likely to remain in one place as long as an item of property which is not consumable or

which is innocuous in itself or not particularly incriminating. . . .

Let it be assumed for purposes of discussion that the defendant in fact robbed the bank on June 22 and that he immediately repaired to his home with his loot and its container, his weapon and his disguise. We think that it may be conceded to the defendant that as late as September 17 there was little reason to believe that any of the bank's money or the money bag would still be in the home. But, the same concession cannot be made with respect to the revolver, the ski mask, and the clothing. The ski mask and the clothes were not incriminating in themselves, and apart from his prior felony record possession of the pistol was not unlawful in itself or particularly incriminating. Moreover, people who own pistols generally keep them at home or on their persons.

*United States v. Steeves, supra* at 38. Other courts have reached a conclusion similar to that in *Steeves* concerning existence of probable cause; for instance, *United States v. Gann*, 732 F.2d 714 (9th Cir. 1984) (observations some 3 weeks before issuance of a search warrant were not too far removed for issuance of a search warrant concerning clothes worn and weapons used in a robbery); *Bastida v. Henderson*, 487 F.2d 860 (5th Cir. 1973) (observations 10 days before issuance of the search warrant for firearms used in a robbery); *Blount v. State*, 511 A.2d 1030 (Del. 1986) (observations 10 days before issuance of a search warrant for clothing and a firearm used for a homicide); *Jensen v. State*, 482 A.2d 105 (Del. 1984) (observations 27 days before issuance of the warrant for clothing and a firearm associated with a sexual assault); and *State v. Friel*, 508 A.2d 123 (Me. 1986) (observations 13 days before issuance of the search warrant for a firearm).

The district court's overruling Groves' motion to suppress was not clearly erroneous under the circumstances. Admittedly, the question whether probable cause existed to search for methamphetamine is rather close, when one considers the relatively small quantity of methamphetamine observed by the informant and mentioned in the officer's affidavit. However, the interval between issuance of the warrant and its execution is

insufficient to compel the conclusion that the information which was the basis for issuance of the search warrant had become stale and, therefore, negated existence of probable cause when the warrant was executed. Moreover, probable cause existed to search for the sawed-off shotgun because police officers had a reasonable belief that the shotgun was still in the residence 9 days after the search warrant was issued. See, *U.S. v. Williams*, 897 F.2d 1034 (10th Cir. 1990) (information, as a basis for the search warrant, was not so stale as to render officers' reliance on the warrant unreasonable); *State v. One 1987 Toyota Pickup*, 233 Neb. 670, 447 N.W.2d 243 (1989) (although the search warrant affidavit contained illegally obtained information, the search warrant was valid because the affidavit also contained lawfully obtained information which, considered alone, established probable cause). See, also, *State v. Guilbeault*, 214 Neb. 904, 336 N.W.2d 593 (1983); *State v. Welsh*, 214 Neb. 60, 332 N.W.2d 685 (1983). Accordingly, police conducted a valid search of the residence where Groves was staying; therefore, the contraband discovered pursuant to that search was admissible in Grove's trial. Thus, the district court was not clearly erroneous in overruling Groves' suppression motion.

Although the majority correctly affirms Groves' convictions, application of § 29-815 as a per se rule for subsistence of probable cause concerning a search warrant executed within the statutorily allowed 10-day period is clearly contrary to the U.S. Supreme Court's instruction that a constitutional question regarding "staleness" of information used for probable cause "must be determined by the circumstances of each case." *Sgro v. United States*, 287 U.S. 206, 211, 53 S. Ct. 138, 77 L. Ed. 260 (1932). Therefore, adoption of a per se statutory rule for determining reasonableness in execution of a search warrant is constitutionally unsound and results in the unconstitutional relinquishment of judicial authority and responsibility to examine and determine whether probable cause existed for execution of a search warrant.

CAPORALE, J., joins in this concurrence.